**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DAGOBERTO LARA-TORRES; ERIKA
LARA-PEREZ,
                        *Petitioners,*

              v.

ALBERTO GONZALES*, Attorney
General,
                        *Respondent.*

No. 02-72329

Agency Nos.
A75-306-260
A75-306-476

DAGOBERTO LARA-TORRES; ERIKA
LARA-PEREZ,
                        *Petitioners,*

              v.

ALBERTO GONZALES, Attorney
General,
                        *Respondent.*

No. 03-70931

Agency Nos.
A75-306-260
A75-306-476

DAGOBERTO LARA-TORRES; ERIKA
LARA-PEREZ,
                        *Petitioners,*

              v.

ALBERTO GONZALES, Attorney
General,
                        *Respondent.*

No. 03-70932

Agency Nos.
A75-306-260
A75-306-476

ORDER AND
AMENDED
OPINION

---

   *Alberto Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

4433

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
January 13, 2004—San Francisco, California

Filed September 8, 2004
Amended April 21, 2005

Before: J. Clifford Wallace, M. Margaret McKeown,
Circuit Judges, and Barry Ted Moskowitz, District Judge.**

Opinion by Judge Wallace;
Concurrency by Judge McKeown

---

**Honorable Barry Ted Moskowitz, United States District Judge for the Southern District of California, sitting by designation.

**COUNSEL**

Marc Van Der Hout, Van Der Hout, Brigagliano & Nightingale, San Francisco, California, for the petitioners.

Russell J.E. Verby, U.S. Dept. of Justice, Washington, D.C., for the respondent.

**ORDER**

The majority opinion filed September 8, 2004, slip op. 12991, and appearing at 383 F.3d 968 (9th Cir. 2004), is hereby amended as follows:

1.  Page 974, at end of second full paragraph, after citation to *Iturribarria*, 321 F.3d at 900-01, insert: "While this temporal distinction may not always be significant, in this case, Pineda's allegedly ineffective assistance did not undermine the fairness of the removal proceedings in part because it was given well before the prospect of a hearing materialized."

2.  Page 975, at end of first paragraph: change "removed from the actual process itself" to "which does not undermine the fairness of the actual process itself"

With these amendments, Judge McKeown has voted to deny the petition for rehearing en banc, and Judges Wallace and Moskowitz have so recommended. The full court has been advised of the petition for rehearing en banc and no

judge of the court has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35. The petition for rehearing en banc is DENIED. No subsequent petitions for rehearing or rehearing en banc may be filed.

_____

**OPINION**

WALLACE, Senior Circuit Judge:

Dagoberto Lara-Torres and Erika Lara-Perez (together Petitioners) timely petitioned for review of three Board of Immigration Appeals (Board) decisions which have since been consolidated before us. We have jurisdiction pursuant to 8 U.S.C. § 1252, and we deny the petitions.

I.

Although the accuracy of the following account might be disputed, for this proceeding we portray the background facts as Petitioners do. Lara-Torres entered the United States from Mexico on June 2, 1988, without being admitted or paroled. Lara-Perez arrived on September 27 of the following year, also crossing into the United States without being admitted. The two, both natives and citizens of Mexico, were married in the United States and have a daughter with United States citizenship. They apparently concealed their illegal immigrant status from United States immigration officials until the following events unfolded.

In January of 1997, Lara-Torres found his way to the law office of Walter Pineda in search of immigration advice. When he inquired about his options for securing permanent legal residence in the United States, Pineda informed him that an asylum application was one possibility. If the Immigration and Naturalization Service (INS) were to deny Lara-Torres's asylum application, an Immigration Judge (IJ) would consider

the application at a subsequent hearing to determine if Lara-Torres must depart the United States. An additional category of relief would be available to Lara-Torres at that time, the exact form of which depended on whether he was placed in immigration proceedings before April 1, 1997, or after. April 1 was significant, Pineda explained, because on that day, recent congressional alterations to United States immigration provisions would become law. Accordingly, if the INS commenced a "deportation" action *prior to* April 1 by filing an "Order to Show Cause," Lara-Torres's accrual of seven years "continuous physical presence" in the United States would make him eligible for "suspension of deportation." On the other hand, if the INS sought to have him "removed" *after* April 1, 1997, Lara-Torres could seek "cancellation of removal," but only upon accumulating ten years physical presence. According to Lara-Torres, Pineda indicated that it did not matter whether Lara-Torres received a "Notice to Appear," charging him as removable, before he reached the ten-year threshold since he would continue to accrue time during immigration proceedings. Relying on Pineda's advice, Lara-Torres signed an asylum application and asked Pineda to complete it. Pineda complied and submitted it to the INS on March 7, 1997. The application listed Lara-Perez as a derivative applicant.

Barely three weeks later, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009-546, took effect, ushering in the sweeping substantive and terminological changes foretold by Pineda. One of the anticipated changes impacted the Petitioners differently than Pineda had suggested. Pineda had accurately reported that IIRIRA would eliminate "suspension of deportation," IIRIRA § 308(b)(7), 110 Stat. at 3009-615 (repealing 8 U.S.C. § 1254), and institute a replacement form of relief—"cancellation of removal"—requiring ten years continuous presence, *id.* § 304(a)(3), 110 Stat. at 3009-594 to 3009-596 (codified as amended at 8 U.S.C. § 1229b). However, Pineda wrongly predicted the effect IIRIRA's "stop-

time" provision would have on the Petitioners' application for cancellation of removal. As alluded to above, Pineda took the position that the provision would not be applied "retroactively" to aliens who submit asylum applications prior to April 1, 1997. This view has not withstood judicial scrutiny. *See, e.g.*, *Vasquez-Zavala v. Ashcroft*, 324 F.3d 1105 (9th Cir. 2003). By its terms, the stop-time provision halts an alien's accrual of physical presence as of the date the INS files a Notice to Appear. 8 U.S.C. § 1229b(d)(1).

Thus, it turned out to be critical that the INS file an Order to Show Cause against the Petitioners before April 1, 1997, instead of a Notice to Appear shortly thereafter. Come April 1, having met the seven-year physical presence requirement for suspension of deportation would no longer matter. Being shy of the ten years necessary for cancellation of removal risked making Petitioners ineligible for any relief if the INS filed a Notice to Appear before they achieved ten years "continuous physical presence." Given Petitioners' status, Pineda's strategy was a much greater gamble than they had been led to believe, and a near sure loser at that. By the Petitioners' calculations, whose accuracy we assume, Pineda filed the March 7 asylum application far too late to sneak through the remaining window of availability for suspension of deportation; at least seven to eight weeks typically passed between filing an asylum application and being charged by the local INS office.

True to its average, the INS filed a Notice to Appear on May 5, 1997. At their hearing before the IJ on July 7, 1997, the Petitioners withdrew their application for asylum. The IJ found them removable and denied their application for cancellation of removal since they had not accrued the required ten years continuous physical presence.

The Petitioners filed an appeal with the Board, which was dismissed on May 30, 2001. The Board did not properly deliver the decision to the Petitioners' counsel of record, and thus was forced to reissue the dismissal on December 28,

2001. We considered this ruling on September 13, 2002, and granted a petition for review because the Board failed to attach a copy of its May 30, 2001, order to the December 28, 2001, reissuance. On January 30, 2003, the Board again attempted to reissue its decision of May 30, 2001, but again neglected to attach a copy of the actual order. One of the Petitioners' three current petitions seeks relief from this failure.

The other two petitions address the issue at the heart of this case: whether Pineda provided constitutionally infirm assistance of counsel. Following the Board's December 28, 2001, dismissal, the Petitioners filed a motion to reopen the matter based on a claim of ineffective assistance of counsel. The Board denied this motion on June 25, 2002, on two grounds: (1) the Petitioners failed to comply with the procedural requirements established in *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988); and (2) Pineda's legal approach was a tactical miscalculation, not ineffective assistance. The Board subsequently rejected the Petitioners' motion to reconsider the June 25, 2002, refusal to reopen. Although the Board reversed itself with respect to the alleged *Lozada* deficiencies, it upheld its determination that Pineda's litigation strategy was tactical. The Petitioners separately petitioned for review of each denial. We consolidated all three petitions in an order dated May 6, 2003.

## II.

We turn first to the ineffective assistance claims in the Petitioners' motion to reopen and motion to reconsider. We review the Board's denials of both motions for an abuse of discretion. We must uphold the Board's ruling "[u]nless [it] acted arbitrarily, irrationally, or contrary to law." *Lo v. Ashcroft*, 341 F.3d 934, 937 (9th Cir. 2003) (internal quotation marks and citations omitted). Questions of law are reviewed de novo, *Lopez v. INS*, 184 F.3d 1097, 1099 (9th Cir. 1999), as are claims of due process violations, *Castillo-Perez v. INS*, 212 F.3d 518, 523 (9th Cir. 2000).

Petitioners' briefs and oral argument posit that Pineda's assistance was ineffective in essentially two ways, both of which entail allegedly erroneous legal positions. First, the Petitioners maintain that Pineda should have pursued a different strategy to secure for them the right to remain lawfully and permanently in the United States. Second, the Petitioners aver that Pineda misinformed them on the relevant law and available legal options.

**[1]** In asserting that Pineda's legal services were defective on these grounds, the Petitioners misconstrue the effective assistance of counsel right applicable to immigration matters. To be certain, evidence of ineffective assistance of counsel can be a ground for reopening immigration proceedings. *See Iturribarria v. INS*, 321 F.3d 889, 894-97 (9th Cir. 2003). But since deportation and removal proceedings are civil, they are "not subject to the full panoply of procedural safeguards accompanying criminal trials," including the right to counsel under the Sixth Amendment. *Magallanes-Damian v. INS*, 783 F.2d 931, 933 (9th Cir. 1986). Instead, the extent to which aliens are entitled to effective assistance of counsel during these proceedings is governed by the *Fifth Amendment due process right* to a fair hearing. *Id.* To establish a due process violation, the Petitioners must make two showings: (1) the alleged ineffective assistance rendered "the proceeding . . . so fundamentally unfair that [they were] prevented from reasonably presenting [their] case," *Iturribarria*, 321 F.3d at 899; and (2) "substantial prejudice," which "is essentially a demonstration that the alleged violation affected the outcome of the proceedings," *Lata v. INS*, 204 F.3d 1241, 1246 (9th Cir. 2000).

**[2]** Although the Petitioners contend they were denied the opportunity to "reasonably present [their] case" during the removal hearing, their argument in support of that proposition fails. None of Pineda's purported deficiencies pertain to the actual substance of the hearing (e.g., evidence presented or omitted, arguments raised or overlooked), let alone call the

hearing's fairness into question. The basic "unfairness" of which the Petitioners complain is that they never would have been subject to removal proceedings had it not been for their reliance on Pineda's unfortunate immigration-law advice. This "unfairness," however, did not taint the "fairness" of the hearing.

As an initial consideration, we have already rejected broader due process attacks of this nature, i.e., that it is unfair to place in removal proceedings illegal aliens who were ineligible for cancellation of removal and who thought their diligence ensured they could avail themselves of suspension of deportation. Most on point is *Vasquez-Zavala v. Ashcroft*, 324 F.3d 1105 (9th Cir. 2003), a case where a husband and wife submitted asylum applications on March 10, 1997, under the assumption that pre-IIRIRA law would apply to place them in deportation proceedings in the event their applications were denied. *Id.* at 1106, 1108. Nonetheless, the INS filed a Notice to Appear charging them as *removable*. *Id.* at 1106. We rebuffed the contention that this offended due process:

> We also reject Petitioners' due process challenge to the application of IIRIRA. Petitioners do not contend that there were any procedural problems with their hearings or ability to present evidence, but rather argue that placing them in removal rather than deportation proceedings by itself amounts to a due process violation. . . . [T]here is no colorable due process claim.

*Id.* at 1108-09. In *Lopez-Urenda v. Ashcroft*, 345 F.3d 788 (9th Cir. 2003), we rejected the same argument raised by a petitioner who applied for asylum immediately before IIRIRA's enactment, concluding "that his placement in removal proceedings is [not] so fundamentally unfair as to amount to a denial of due process." *Id.* at 796; *see also Ramirez-Zavala v. Ashcroft*, 336 F.3d 872, 874-75 (9th Cir. 2003) (holding that an alien who tried to file for suspension

of deportation with the INS before April 1, 1997, was not eligible for that relief because her removal proceedings commenced with the filing of a Notice to Appear); *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 600 (9th Cir. 2002) (same). The principle driving these decisions governs here. Removal proceedings do not become constitutionally unfair simply because they are precipitated in part by an attorney's advice instead of general INS delay, or because the illegal alien might believe that he could avoid detection until eligible for another form of relief.

The Petitioners' misguided citation to *Strickland v. Washington*, 466 U.S. 668 (1984), and the proposition for which it stands—that "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances," *id.* at 688—is emblematic of their defective reasoning. *Strickland* defined the *Sixth Amendment* standard for *criminal* proceedings, *id.* at 687, which, as stated above, does not attach to civil immigration matters. *See Magallanes-Damian*, 783 F.2d at 933 ("Petitioners must show not merely ineffective assistance of counsel, but assistance which is so ineffective as to have impinged upon the fundamental fairness of the hearing . . . ."). The Petitioners are thus wrong to assert that we must assess Pineda's performance strictly in terms of *Strickland*'s "reasonableness" standard. The proper focus of our inquiry is whether "the proceeding is so fundamentally unfair that the alien is prevented from reasonably presenting her case." *Iturribarria*, 321 F.3d at 899.

**[3]** Indeed, the Petitioners cite no authority that construes the Fifth Amendment's fair hearing guarantee to inquire only into the reasonableness of the lawyer's actions, and our relevant precedent yields no support for this theory. To be certain, we have commented on the significant role a lawyer plays in helping navigate illegal aliens through an intricate set of procedures. *See, e.g.*, *Monjaraz-Munoz v. INS*, 327 F.3d 892, 897 (9th Cir. 2003) ("The role of an attorney in the deportation process is especially important. For the alien unfamiliar with

the laws of our country, an attorney serves a special role in helping the alien through a complex and completely foreign process."); *Iturribarria*, 321 F.3d at 901 ("One reason that aliens . . . retain legal assistance in the first place is because they assume that an attorney will know how to comply with the procedural details that make immigration proceedings so complicated."). When we have characterized counsel's assistance as ineffective, however, the legal services were rendered *while proceedings were ongoing*; that is, *after* a charging document was filed. *See, e.g.*, *Rodriguez-Lariz v. INS*, 282 F.3d 1218, 1226 (9th Cir. 2002) (recognizing counsel was ineffective when the attorney, during the pendency of deportation proceedings, inexplicably failed to fulfill his promise to file a timely application for relief); *Castillo-Perez*, 212 F.3d at 526 (same); *Iturribarria*, 321 F.3d at 900-01(same). While this temporal distinction may not always be significant, in this case, Pineda's allegedly ineffective assistance did not undermine the fairness of the removal proceedings in part because it was given well before the prospect of a hearing materialized.

The two cases the Petitioners offered during oral argument as examples of due process infringements observed outside the context of a specific proceeding are inapposite. The effective assistance of counsel was simply not at issue. *See McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 491 (1991) (deciding a jurisdictional issue in a case where there was no "dispute that the INS routinely and persistently violated the Constitution and statutes in *processing* [special agricultural workers] *applications*" (emphasis added)); *Walters v. Reno*, 145 F.3d 1032, 1036 (9th Cir. 1998) (holding that "the nationwide procedures by which the INS obtained waivers in document fraud cases violated the aliens' rights to due process of law"). Although we do not controvert that due process violations can come in a variety of shapes and sizes, we are unpersuaded that the Petitioners have suffered one here. We reject the Petitioners' attempt to cast such an expansive and amorphous Fifth Amendment due process right that encom-

passes legal assistance which does not undermine the fairness of the actual process itself.

The conclusion we reach here accords with *Huicochea-Gomez v. INS*, 237 F.3d 696 (6th Cir. 2001), a nearly identical case where the petitioners "contend[ed] that [their attorney]'s conduct amounted to ineffective assistance of counsel because his ineptitude brought [them] to the attention of the INS for removal, when they had been living respectably, even if illegally, in the United States for a period just short of the time required for eligibility to request cancellation of removal." *Id.* at 698. The attorney's blunder was asking the INS in September 1997 to commence immigration proceedings so that petitioners could apply for suspension of deportation, unaware that IIRIRA repealed that form of relief and replaced it with another for which the petitioners were not yet eligible. *Id.* at 697-98. Nonetheless, the Sixth Circuit held that the petitioners could not establish that they were prejudiced by the miscue:

> It is too speculative for the [petitioners] to claim that but for [their attorney]'s legal advice, they would not be facing deportation or would have been granted the discretionary relief they are seeking. Because the [petitioners] have conceded their removability, as the facts plainly indicate, they cannot establish that [their attorney]'s ineffective assistance, which led to the [Board]'s final order of removal, has denied them their Fifth Amendment right to due process of law.

*Id.* at 700.

**[4]** The fallacy in the Petitioners' argument is further exposed by the relief they propose for the alleged due process violation. Broadly speaking, due process violations are remedied by providing the aggrieved party the process he or she was deprived (or an equivalent). Hence immigration proceedings are "reopened" to give a petitioner the opportunity to

press the case fully, an opportunity the illegal alien lacked the first go-around due to prior counsel's legal errors. Nothing would change in this case, however, if the Petitioners were given a do-over; putting them back in removal proceedings could not result in anything other than their removal since they never accrued the ten years continuous physical presence that would make them eligible for cancellation of removal. The remedy they endeavor to fashion—to be placed back in removal proceedings and treated as if IIRIRA's stop-time rule did not apply to them—would require the untenable construction of an entirely hypothetical world.

In sum, the Petitioners were in the United States illegally in 1997, and the INS was well within its authority in filing a Notice to Appear to commence removal proceedings. Except as discussed in Part III below, there is no indication the INS or the Board failed to afford them all the proper procedural protections in holding them removable on the basis of that charging document. More importantly, there is nothing indicating that Pineda's legal services undermined the fundamental fairness of those proceedings. This is all the process due to the Petitioners.

The Petitioners suggest that the Board's specific inquiry— whether Pineda made a series of legitimate tactical decisions —narrows our review to that particular issue. We are keenly aware of the limitations placed on our authority to scrutinize Board determinations. *See, e.g.*, *INS v. Ventura*, 537 U.S. 12 (2002) (per curiam) (reversing because, instead of remanding to the Board, our court ruled on an alternative ground the Board had not reached). However, in examining the scope of the Fifth Amendment effective assistance of counsel right applicable to immigration proceedings, we are not "disregard-[ing] the [Board]'s legally mandated role" to consider certain matters in the first instance, nor are we depriving it of the opportunity to pass on an issue suited to its expertise or that requires it to develop the record. *See id.* at 17. Rather, we are addressing an antecedent question of law whose resolution

determines whether the Petitioners have any basis for relief in the first place. In that sense, we are ruling on the ground on which the Board relies: Pineda's "advocacy did not constitute ineffective assistance of counsel," because his advice could not constitute ineffective assistance of counsel under the circumstances.

As Petitioners' due process rights were not violated, the Board did not abuse its discretion in denying their motion to reopen and motion to reconsider.

## III.

**[5]** Lastly, the Petitioners take issue with the Board's improper service of its May 30, 2001, order affirming the IJ ruling that they are removable. It is undisputed that the applicable immigration regulations obligated the Board to supply a copy of the decision to the alien petitioner, 8 C.F.R. § 3.1(f) (2001) (now codified at 8 C.F.R. § 1003.1(f)), and that the Board failed to comply. However, the Petitioners have not been injured by the Board's oversight, nor do they specify any relief to which they are entitled. *See Florez-de Solis v. INS*, 796 F.2d 330, 336 (9th Cir. 1986) ("Violation of a regulation renders the deportation unlawful only if the violation prejudiced the interests of the alien which are protected by the regulation." (internal quotation marks, brackets, and citations omitted)). We have stated that 8 C.F.R. § 3.1(f) (2001), the regulation ignored by the Board, "protect[s the alien's] right to petition this court for review." *Florez-de Solis*, 796 F.2d at 336. The Petitioners were "not deprived of these rights" because their "petition to this court for review was timely and [they have] obtained that review." *Id.*; *cf. Martinez-Serrano v. INS*, 94 F.3d 1256 (9th Cir. 1996). We can provide no further redress.

Petition DENIED.

McKEOWN, Circuit Judge, concurring in the judgment:

I agree with the result reached by the majority, but cannot sign onto its reasoning without qualification. I would simply deny Lara-Torres's petition on the ground that the BIA was correct to conclude that the original attorney committed a tactical miscalculation rather than ineffective assistance of counsel. I agree that the error here should be judged against the Due Process Clause of the Fifth Amendment. I write separately because I am unable to join the majority in its effort to forge new constitutional boundaries where resolution could be reached on much narrower grounds.

At the heart of my concern is the rigid temporal barrier the majority erects around what it calls "the actual process itself." Under the thesis crafted by the majority, due process claims akin to Lara-Torres's are subject to a new threshold question: Were "the legal services [ ] rendered . . . *after* a charging document was filed"? Maj. op. at 4445 (emphasis in original). By fixating on the word "process" in "due process" and reducing it to its most technical meaning, *see id.* at 4445, the majority elevates to paramount importance the initiation of a formal legal proceeding. So much of lawyering, and, for that matter, the legal "process," occurs before or in connection with initiation of formal proceedings such that the majority's new rule has the capacity to narrow significantly the protections afforded by due process.

The rigidity imposed by the majority's rule runs contrary to the spirit of due process and fundamental fairness. As the Supreme Court has explained in the civil context of child custody hearings, due process "is not a technical conception with a fixed content." *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 24 (1981). "Rather, the phrase expresses the requirement of 'fundamental fairness,' a requirement whose meaning can be as opaque as its importance is lofty." *Id.* The majority here perhaps attempts to relieve due process of some of its murkiness. But whatever clarity might be gained comes at too great

a cost: the temporal incision created by the majority opinion cuts away the actual substance of fundamental fairness.[1]

Resolution of this case could be accomplished by adherence to the principle of judicial restraint. Substantial record evidence supports the BIA's conclusion that the strategical errors committed by Lara-Torres's attorney did not rise to the level of constitutional infirmity. In my view, it is more prudent to deny the petition for this reason than to fashion a new rule of constitutional law.

Accordingly, with respect to Part II, I respectfully concur only in the result.

---

[1]In the criminal context, for example, we frequently entertain claims that due process was violated when statutory language is so ambiguous that the "defendant . . . had no fair warning that his conduct violated the law." *Webster v. Woodford*, 361 F.3d 522, 530 (9th Cir. 2004). The foundation of such an argument lies entirely outside of the temporal scope of "the proceedings," yet we accept without hesitation that the right claimed is one contemplated by the Fifth (or Fourteenth) Amendment.