**Maria De Los Angeles JUAREZ–BAEZ, Petitioner,**

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

No. 03–72508.

United States Court of Appeals, Ninth Circuit.

Submission Deferred Feb. 8, 2006.

---

Resubmitted Aug. 29, 2006.*

Filed Aug. 30, 2006.

Meredith R. Brown, Glendale, CA, for Petitioner.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Ronald E. Lefevre, Chief Legal Officer, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, OIL, Michele Y.F. Sar-

ko, Attorney, DOJ–U.S. Department of Justice Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: PREGERSON, W. FLETCHER, and BYBEE, Circuit Judges.

## MEMORANDUM **

Maria Juarez–Baez appeals the Board of Immigration Appeal's ("BIA") 2003 denial of her motion to reopen claiming ineffective assistance of counsel and seeking to introduce new evidence showing a decline in her daughter, Esmerelda's, health. We grant the petition for review and remand to the BIA for further proceedings.

We review the denial of a motion to reopen for an abuse of discretion. *See Lara–Torres v. Ashcroft,* 383 F.3d 968, 972 (9th Cir.2004). We review ineffective assistance of counsel claims de novo. *See Dearinger ex rel. Volkova v. Reno,* 232 F.3d 1042, 1044–45 (9th Cir.2000).

Juarez–Baez initially sought relief from removal in the form of suspension of deportation before the immigration judge. Petitioners have a due process right to effective assistance of counsel when applying for discretionary relief. *Castillo–Perez v. INS,* 212 F.3d 518, 526–27 (9th Cir. 2000); *Lin v. Ashcroft,* 377 F.3d 1014, 1027 (9th Cir.2004). In order to establish ineffective assistance of counsel, Juarez–Baez must show both that her counsel failed to perform with sufficient competence and that she suffered prejudice. *See Lin,* 377 F.3d at 1027.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

With respect to deficient performance, "[w]e do not require that [petitioner's] representation be brilliant, but it cannot serve to make [the] immigration hearing so fundamentally unfair that [petitioner] was prevented from reasonably presenting his case." *Id.* (internal quotation marks omitted). We conclude that Juarez–Baez has satisfied the deficient performance prong because counsel's failure to explain to Juarez–Baez what was required to prevail on a suspension of deportation claim, to speak with Esmerelda's doctors regarding her medical condition, and to ask for updated information on Esmerelda's condition prevented Juarez–Baez from reasonably presenting her case.

Notably, during the hearing both the judge and government counsel commented on the insufficiency of the medical evidence presented regarding Esmerelda's heart condition. The judge openly asked counsel, "Why don't we have a doctor's letter saying she still needs medical attention, this is the prognosis?" The need for such a letter (or its equivalent) would have been obvious to any competent counsel, and there is no indication in this case that it would have been unduly difficult to obtain. Government counsel commented that the one item of evidence, over three years old, "doesn't go into any type of detail regarding what the follow ups need to entail."

With respect to prejudice, the inquiry is whether counsel's performance "may have affected the outcome of the proceedings." *Maravilla Maravilla v. Ashcroft,* 381 F.3d 855, 858 (9th Cir.2004) (internal quotation marks omitted). Given the judge's and government counsel's comments on the insufficiency of the medical evidence presented, we have no trouble finding that counsel's performance may have affected the outcome in her case.

We conclude that Juarez–Baez has satisfied the prejudice prong because she has made a plausible claim for extreme hardship based on her daughter's condition. For this reason, counsel's failure to introduce available evidence as to hardship may have affected the outcome in her case.

We grant the petition for review. We remand to the BIA under *INS v. Ventura,* 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) to consider the full extent of newly acquired evidence of hardship.

**PETITION GRANTED. REMANDED.**

BYBEE, Circuit Judge, dissenting.

I cannot agree that counsel's performance in this case "fell below an objective standard of reasonableness" as required by *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We may find ineffective assistance only in egregious cases, where "counsel's performance rendered the proceeding ... so fundamentally unfair that [Juarez–Baez] was prevented from reasonably presenting [her] case." *Lin v. Ashcroft,* 377 F.3d 1014, 1027 (9th Cir.2004) (internal quotation marks omitted); *see also Castillo–Perez v. INS,* 212 F.3d 518, 522 (9th Cir. 2000) (finding ineffective assistance where counsel failed to file an application for suspension of deportation, and erroneously informed his client that the application had been timely filed). Counsel is presumed to have assisted effectively. *Pizzuto v. Arave,* 280 F.3d 949, 954 (9th Cir.2002) ("there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance") (internal quotation marks omitted). Before we condemn his assistance, we must "reconstruct the circumstances of counsel's challenged conduct" and "evaluate the conduct from counsel's perspective at the time." *Id.* at 689, 104 S.Ct. 2052. "We will neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of

hindsight." *Campbell v. Wood,* 18 F.3d 662, 673 (9th Cir.1994). In sum,

> [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Strickland,* 466 U.S. at 688, 104 S.Ct. 2052.

We review the BIA's denial of a motion to reopen for an abuse of discretion, *Lara–Torres v. Ashcroft,* 383 F.3d 968, 972 (9th Cir.2004), and "[u]nless the BIA acted arbitrarily, irrationally, or contrary to law, we should not disturb the BIA's ruling." *Singh v. INS,* 213 F.3d 1050, 1052 (9th Cir.2000) (internal quotation marks omitted). Although we review Juarez–Baez's due process claim of ineffective assistance de novo, *Rodriguez–Lariz v. INS,* 282 F.3d 1218, 1222 (9th Cir.2002), "[w]e review findings of fact regarding counsel's performance for substantial evidence." *Lin,* 377 F.3d at 1024. *Cf. Id.* (reviewing factual findings underlying an ineffective assistance of counsel claim de novo where the BIA "did not consider or give weight to the new evidence"); *Dearinger ex rel. Volkova v. Reno,* 232 F.3d 1042, 1044–45 (9th Cir.2000) (reviewing de novo ineffective assistance claims first made in a habeas proceeding before the district court and not previously considered by the BIA). Here, the BIA reviewed Juarez–Baez's new evidence concerning her daughter's health and found it "uncorroborated" and "wholly contradictory" with the medical record and with Juarez–Baez's original testimony. [AR 2]

There was substantial evidence supporting the BIA's determination. This is not a case where counsel failed to investigate an important aspect of the case. Unlike Lin's attorney, who was "unprepared; had not expected to argue; did not seek out the evidence she should have found; did not present effectively the evidence she had at hand; presented no legal framework for an asylum claim; and left her client alone, bewildered, and unrehabilitated as a witness," *Lin,* 377 F.3d at 1027, Juarez–Baez's counsel asked his client to submit all available documentation on her daughter's condition and included presented her medical report to the IJ. [AR 2] He questioned her about Esmerelda's health both before and at the hearing. Through counsel's examination, Juarez–Baez informed the judge that Esmerelda had two heart murmurs, requiring two surgeries, and that the most recent surgery had taken place three years before the hearing. [AR 108–109] When counsel asked Juarez–Baez if the heart problems were "over with," she affirmed that they were, "[r]ight now thanks to God for doing that." [AR 118] Counsel continued to question her, revealing that Esmerelda needed yearly checkups and suggesting that should she become ill after deportation to Mexico, there would be no specialist available to care for her. [AR 119, 123].

We must decide whether her counsel was constitutionally required to do more than this—to call Esmerelda's doctors, request additional records, or perhaps order additional medical evaluations in the hope that additional evidence would contradict both Juarez–Baez's testimony and Esmerelda's medical report showing there was little likelihood of continuing complications.[1] Indeed, Juarez–Baez has submitted no reports predating her January 2000 hearing, and this suggests that there were no additional records for counsel to discover.[2] Although Juarez–Baez now contends

---

1. Esmerelda had no health coverage at the time of the hearing, and presumably Juarez–Baez would have had to pay out-of-pocket for any additional examinations. [AR 111]

2. The majority suggests that the IJ's asking "Why don't we have a doctor's letter saying

that her daughter suffered from shortness of breath, "rac[ing]" heartbeat, and that she used medications and oxygen at the time of the hearing, there is no evidence that she told counsel about these difficulties when he asked about Esmerelda's health. [AR 23] In fact, the BIA found that these contentions contradicted Juarez–Baez's hearing testimony.[3] The BIA further found that counsel was not ineffective because, at the time of the hearing, "respondent herself did not indicate that her daughter's medical condition was, as she now contends, worsening or required anything more than checkups." [AR 03]. Because "[we] review [the BIA's] findings of fact regarding counsel's performance for substantial evidence," we owe the finding great deference. *Lin,* 377 F.3d at 1024.

Because counsel had no reason to suppose that continued investigation would reveal useful evidence, I cannot condemn his decision not to expend any more resources on medical research, even under de novo review. The Supreme Court has recognized that counsel cannot pursue all possible avenues of research in a given case because "[l]imitations of time and money ... may force early strategic choices, often based solely on conversations with the defendant." *Strickland,* 466 U.S. at 681, 104 S.Ct. 2052. In investigating Esmerelda's

congenital heart problems, "[n]o doubt counsel could have done more; more is always possible." *Pizzuto,* 280 F.3d at 969. Counsel's failure to conduct a more detailed investigation into Esmerelda's health did not, however, render the proceeding "so fundamentally unfair" that petitioner "was prevented from reasonably presenting [her] case." *Lin,* 377 F.3d at 1027 (internal quotations marks omitted).

Not only was counsel reasonable in not expending resources on a medical investigation, he likely made a sensible tactical decision not to do so. From the information he had been given, it looked as if Esmerelda's health was improving. She had not required anything more than a check up in the recent past, and her medical report predicted that "[g]iven the small size of the residual ventricular septal defect, no cardiovascular symptoms would be suspected, nor any effect on her growth, development, or future lifestyle." [AR 180] If we presume that Esmerelda's mother told her attorney the same story she later gave the IJ (she does not allege that she informed him of any health problems not revealed at the hearing), Esmerelda's problems were "over with." [AR 118] Thus at the time of the hearing, counsel could have reasonably decided

she still needs medical attention" and government's comment that the letter provided was three years old represent condemnation of counsel's performance. Maj. at 665. However, the comments suggest that, as the BIA later determined, there was no evidence that Esmerelda had serious health problems at the time of the hearing. These observations provide no evidence that medical records sufficient to warrant relief could have been obtained, and the BIA subsequently rejected Juarez–Baez's testimony otherwise. The evidence does not compel a contrary result. *Monjaraz–Munoz v. INS,* 327 F.3d 892, 895 (9th Cir.2003).

**3.** Juarez–Baez now claims that at the time of the hearing her daughter experienced short-

ness of breath on short walks, at the hearing she testified that she took Esmerelda to the park to play on weekends, and that "[w]e just go anywhere and everywhere for outings." [AR 44] Juarez–Baez's current description of oxygen usage is itself contradictory. She affirmed that "I had an oxygen tank in the house for a year after surgery," suggesting that oxygen administration had ceased by the time of the hearing. [AR 23] She then stated that "to this date, I give [Esmerelda] oxygen at home," suggesting continual usage, implicitly including the time of the hearing. [AR 23] Juarez–Baez presented no documentation to show that Esmerelda took any medications at the time. [AR 2]

that ordering additional records, conducting physician interviews, or requesting the Esmerelda get a more recent check-up would only reveal an improvement in her health, making it less likely that her mother could show hardship. In that case, "it would have been foolhardy for counsel not to let sleeping dogs lie." *Pizzuto*, 280 F.3d at 967 n. 7; *see also Burger v. Kemp*, 483 U.S. 776, 790, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987) (holding that failure to present evidence was a reasonable tactical decision where it might prompt a "foreseeably devastating cross-examination").

In addition to her claim that counsel did not adequately research Esmerelda's health condition, Juarez–Baez alleges that he is responsible for failing to correct her testimony that her mother is a doctor in a Mexican hospital. Her mother is, Juarez–Baez now explains, a nurse. Counsel had no reason to suspect a mistake had been made because the IJ questioned Juarez–Baez very closely on the subject, repeatedly referring to doctors and nurses. Juarez–Baez gave no indication that there had been a misunderstanding. [AR 123–125, 129] Petitioner herself had studied nursing, so counsel could reasonably presume that she knew the difference between a doctor and a nurse. The BIA did not abuse its discretion in finding that this mistake was attributable to Juarez–Baez herself, rather than to any mistake of counsel. [AR 3]

Since Juarez–Baez's appeal, it appears Esmerelda has developed additional medical problems: Her sternum failed to properly heal after her surgery, causing spinal deformities that may require surgery. [Blue Br. Appendix] The proper course of action is for Juarez–Baez to petition the BIA to reopen in consideration of this

* The Honorable Ronald S.W. Lew, United States District Judge for the Central District

newfound evidence of hardship. It is this new information, rather than counsel's performance at the hearing, that now casts doubt on whether deportation is appropriate. "[T]he facts of [this] particular case, viewed as of the time of counsel's conduct" do not show that his service fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052. Juarez–Baez's remedy lies not in blaming her counsel, but in seeking to reopen her case before the BIA.

I respectfully dissent.