# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EDUARDO TORRES-CHAVEZ,
                              *Petitioner,*

v.

ERIC H. HOLDER Jr., Attorney
General,
                              *Respondent.*

No. 05-72226

Agency No.
A090-543-482

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
March 10, 2009—San Francisco, California

Filed June 5, 2009

Before: M. Margaret McKeown and Sandra S. Ikuta,
Circuit Judges, and Frederic Block,* District Judge.

Opinion by Judge Ikuta

---

*The Honorable Frederic Block, Senior United States District Judge for
the Eastern District of New York, sitting by designation.

**COUNSEL**

Steven P. Brazelton, Reno, Nevada, for the petitioner-appellant.

Peter D. Kiesler, M. Jocelyn Lopez Wright, Carol Federighi, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for the respondent-appellee.

---

**OPINION**

IKUTA, Circuit Judge:

Eduardo Torres-Chavez petitions for review of a final order of removal under the Immigration and Nationality Act (INA). He claims that his concession of alienage before the Immigration Judge was the result of legal representation so egregiously deficient that it violated his Fifth Amendment right to due process. We hold that Torres's due process rights were not violated by his lawyer's performance, and accordingly deny his petition for review.

I

Torres entered the United States without authorization in December 1981, at the age of fifteen. In 1987, Torres sought to take advantage of the amnesty provisions of the Immigration Reform and Control Act (IRCA), Pub. L. No. 99-603, § 201, 100 Stat. 3359, 3394 (1986) (codified as amended at section 245A of the INA, 8 U.S.C. § 1255a).

IRCA created a one-year window during which aliens who unlawfully entered the United States before January 1, 1982 could obtain legal-resident status. *See id.* §1255a(a)(1)(A). To obtain temporary residence, an alien was required to apply for a Form I-688 Temporary Resident Card between May 5, 1987

and May 4, 1988. *See* 8 C.F.R. § 245a.2(a), (j). An alien who obtained temporary-resident status was then required to file an application for permanent residence within 43 months in order to adjust his status to that of a lawful permanent resident. *See* 8 U.S.C. § 1255a(b)(1)(A), (b)(2)(C).[1]

"In order to alleviate the concerns of illegal aliens that information disclosed in their applications would be used as a basis to prosecute or deport them," 17 Op. Off. Legal Counsel 172, 173 (1993), section 245A provides a confidentiality provision, stating that the Attorney General may not "use the information furnished by the applicant pursuant to an application filed under this section for any purpose other than to make a determination on the application, for enforcement of paragraph (6) [prohibiting false statements in applications], or for the preparation of reports to Congress." 8 U.S.C. § 1255a(c)(5)(A)(i). This confidentiality extends only to "information furnished by an applicant pursuant to the application, or any other information derived from the application, that is not available from any other source." *Id.* § 1255a(c)(5)(D)(i).

Torres was issued a Form I-688 Temporary Resident card on March 4, 1988. Under IRCA, Torres had until September 30, 1991 to file a permanent-residence application. 8 U.S.C. § 1255a(b)(1)(A). On August 30, 1993, five years after receiving his temporary-resident status, Torres went to the San Francisco office of the (former) Immigration and Naturalization Service to inquire about his permanent-residence application. He filled out a form entitled "Notice of Appeal of Decision under Section 210 or 245A of the Immigration and

---

[1]Originally, an alien had only 31 months to apply for permanent residence, but this period was retroactively extended an additional 12 months. *See* Pub. L. No. 101-649 § 703, 104 Stat. 4978, 5086 (1990); One-Year Extension of Deadline for Filing Applications for Adjustment From Temporary to Permanent Residence for Legalized Aliens, 56 Fed. Reg. 31060 (Jul. 9, 1991).

Nationality Act," on which he listed his name, address, and alien registration number ("A-number"). He also wrote, in Spanish, that he had hired a lawyer and "thought he had submitted the application but it was not the case." Torres claims he never received a response to this inquiry. INS records reflect that Torres's permanent-residence application was denied as untimely on August 18, 1995.

On March 28, 2003, eight years after his visit to the INS's San Francisco office, Torres went to the INS office in Reno, Nevada. There he submitted a handwritten "INQUIRY/ REQUEST" form, in which he wrote, in English, "I need to know where my work card is. Can someone please check on it." Unlike the "Notice of Appeal of Decision under Section 210 or 245A of the Immigration and Nationality Act" submitted to the INS in 1993, this inquiry did not refer to section 245A or indicate that Torres's inquiry concerned his application for permanent residence. Upon determining that Torres was in the country unlawfully, INS agents arrested Torres and personally served him with a notice to appear (NTA).

Torres appeared before the IJ on September 24, 2003. He was represented by an attorney, Steven Brazelton. During that hearing, Brazelton, on behalf of Torres, admitted the factual allegations in the NTA (including the fact that Torres was an alien) and conceded that Torres was removable. Brazelton then informed the IJ that Torres would be seeking cancellation of removal and requested a continuance to submit the application. The IJ set an application filing date of January 23, 2004 and a hearing date of February 2, 2004.

Torres never filed an application for cancellation of removal. Instead, on December 30, 2003, Torres moved to withdraw the factual admissions and concession of removability that he had made at the March 28, 2003 hearing, on the ground that Brazelton had provided ineffective assistance of counsel. (This motion was filed by Brazelton, who has continued to represent Torres since then, including before this

court.) Torres argued that he would never have admitted he was an alien had Brazelton informed him of his "right to remain silent" regarding his alienage. Torres also moved to "suppress all evidence obtained by the government in relation to [Torres's] applications for residency under section 245A of the Immigration and Nationality Act," based on section 245A's confidentiality provision covering materials submitted "pursuant to" a residency application. The IJ denied both motions on January 15, 2004. Torres then unsuccessfully attempted to take an interlocutory appeal to the BIA.

On February 2, 2004, Torres appeared before the IJ. Torres renewed both motions, and the IJ heard arguments by the parties. Torres testified that he went to the INS office in Reno to inquire about his "amnesty case." He refused to answer the government's questions regarding his alienage, and again argued that all documents in the record establishing alienage were submitted as part of his permanent-residence application under section 245A of the INA, 8 U.S.C. § 1255a. The IJ ruled against Torres. Rejecting Torres's claim that Brazelton rendered ineffective assistance of counsel when he conceded Torres's removability at the September 24th hearing, the IJ held that, "whether for tactical or strategic reasons, counsel for the respondent elected to admit and concede" removability and the factual allegations in the NTA. The IJ also denied Torres's renewed motions to suppress his factual admissions and concession of removability, holding that Torres's two inquiries to the INS, as well as the evidence contained in the NTA, did not "relate" or "pertain[ ]" to a permanent-residence application under section 245A, and were therefore not covered by that section's confidentiality provision. Accordingly, the IJ ordered Torres removed.

The IJ's order of removal became final on March 21, 2005, the date on which the BIA affirmed the IJ's decision. *See* 8 U.S.C. § 1101(a)(47)(B). Torres timely filed his petition for review within thirty days, on April 18, 2005, giving us jurisdiction over his petition for review under 8 U.S.C.

§ 1252(b)(1). "Questions of law, as well as claims of due process violations, are reviewed de novo." *Hernandez v. Mukasey*, 524 F.3d 1014, 1017 (9th Cir. 2008).

II

On appeal, Torres claims that none of his admissions of alienage were admissible and that the government therefore failed to meet its burden of proving that he is an alien. He argues that his admission of alienage before the IJ should be suppressed as the product of ineffective assistance of counsel and that his written and oral admissions to the INS were inadmissible under the confidentiality provision in section 245A.

**[1]** We begin by considering Torres's ineffective-assistance-of-counsel claim. We have explained that "removal proceedings are civil," *Lara-Torres v. Ashcroft*, 383 F.3d 968, 973 (9th Cir. 2004), and that litigants "in removal proceedings have no Sixth Amendment right to counsel," *Nehad v. Mukasey*, 535 F.3d 962, 967 (9th Cir. 2008). Nevertheless, we have held that aliens' counsel can "be so ineffective as to deprive them of their Fifth Amendment right to due process of law." *Id.* Specifically, we have held that an alien's right to due process can be violated by "egregious conduct that threatens the fairness of the proceeding," including egregiously deficient performance by the alien's lawyer. *Id.* at 971; *accord Magallanes-Damian v. INS*, 783 F.2d 931, 933 (9th Cir. 1986). Therefore, in assessing an attorney's performance, "[t]he proper focus of our inquiry is whether the proceeding is so fundamentally unfair that the alien is prevented from reasonably presenting her case." *Lara-Torres*, 383 F.3d at 974 (citation and internal quotation marks omitted). An alien must also show "substantial prejudice" by demonstrating that "the alleged violation affected the outcome of the proceedings." *Id.* at 973.

**[2]** Although aliens "shoulder a heavier burden of proof" in establishing ineffective assistance of counsel under the Fifth

Amendment than under the Sixth Amendment, *Magallanes-Damian*, 783 F.2d at 933, we may begin our analysis within the Sixth Amendment framework established by *Strickland v. Washington*, 466 U.S. 668 (1984). *See, e.g.*, *Hernandez*, 524 F.3d at 1017; *Matter of Velasquez*, 19 I. & N. Dec. 377, 382 (1986). If an attorney's performance passes muster under *Strickland*, it cannot render an alien's proceeding fundamentally unfair. In other words, there is no violation of the alien's Fifth Amendment right to due process if the alien's counsel was effective for Sixth Amendment purposes.

**[3]** Under *Strickland*, a criminal defendant's counsel may be deemed ineffective only if counsel's performance falls outside "the wide range of reasonable professional assistance." 466 U.S. at 689. Our "scrutiny of counsel's performance must be highly deferential," and "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). In particular, we must "evaluate the conduct from counsel's perspective at the time," taking care not to view a lawyer's decisions in "the distorting effects of hindsight," and bearing in mind that defendants are generally bound by the "strategic" and "tactical" admissions and concessions made by their lawyers. *Id.* at 689-90. "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment." *Id.* at 681.

Torres claims that Brazelton's performance was deficient under *Strickland* because Brazelton conceded Torres's alienage and failed to inform Torres about the advantages of remaining silent. Torres contends that his prior communications with the INS were confidential under section 245A, and thus the government could not have used any evidence of alienage contained in those communications at the hearing. At a minimum, Torres claims, there was a possibility that a motion to suppress such evidence would have been granted

(or eventually would have been successful on appeal to the BIA or petition for review to this court). If such a motion had been successful, Torres argues, the government would have lacked the evidence necessary to carry its burden of proving that Torres was an alien by "clear, unequivocal, and convincing evidence." *Woodby v. INS*, 385 U.S. 276, 286 (1966). Torres's silence at the hearing would not have availed the government, because an alien's refusal to concede alienage does not itself "establish a prima facie case of alienage, sufficient to shift the burden of proof to the respondent." *Matter of Guevara*, 20 I. & N. Dec. 238, 242 (BIA 1991). Accordingly, Torres argues, there was no strategic or tactical reason for Brazelton to concede Torres's alienage before the IJ. Torres also argues that Brazelton's "failure to advise [Torres] of his right to remain silent indicates that [Torres's] pleadings were neither knowing nor voluntary," analogizing to withdrawals of guilty pleas under Rule 11 of the Federal Rules of Criminal Procedure.

**[4]** We disagree. Even if we assume that Torres may claim that Brazelton's services were ineffective while continuing to rely on Brazelton's services to raise that very claim, his argument fails because Brazelton's representation of Torres did not fall outside the wide range of reasonable representation. A lawyer in Brazelton's position could have reasonably made the tactical decision to concede his client's alienage. As noted above, Torres's inquiry regarding his "work card" on March 28, 2003 listed Torres's A-number and his place of birth as Mexico City, thus providing evidence of Torres's alienage. Brazelton had no assurance that he would be able to argue successfully that this inquiry was subject to section 245A's confidentiality provision. To begin with, Torres has not cited, nor have we found, any case or authoritative agency interpretation directly addressing whether section 245A's confidentiality provision extends to inquiries that on their face provide no indication that they are "pursuant to an application" filed under that section. Moreover, even if section 245A's confidentiality provision does extend to any inquiry that an alien

subjectively intended as a follow-up to a section 245A application, Brazelton had no assurance that the finder of fact would ultimately conclude that Torres had the necessary intent. Indeed, as it turned out, the IJ found that Torres's March 28, 2003 inquiry did not pertain to an application under section 245A of the INA. Finally, even though a refusal to deny alienage, standing alone, is insufficient to meet the government's burden of proving alienage, it can still provide a basis for an "adverse inference" that an alien is "not legally in this country." *Cabral-Avila v. INS*, 589 F.2d 957, 959 (9th Cir. 1978); *accord Matter of Guevara*, 20 I. & N. Dec. at 241.

**[5]** In sum, given the lack of certainty as to whether Torres's March 28, 2003 inquiry was admissible in the immigration hearing, along with the risks of remaining silent, Brazelton could have reasonably decided to concede Torres's alienage and seek affirmative relief for his client rather than pursue a motion to suppress. *See Knowles v. Mirzayance*, 556 U.S. ___, 129 S. Ct. 1411, 1422 (2009) ("Counsel also is not required to have a tactical reason—above and beyond a reasonable appraisal of a claim's dismal prospects for success—for recommending that a weak claim be dropped altogether."). Brazelton's initial approach, as he informed the IJ at the September 24th hearing, was to seek cancellation of removal, and focusing the court's attention on a particular basis for relief is a legitimate reason to concede removability. *See Rodriguez-Gonzales v. INS*, 640 F.2d 1139, 1142 (9th Cir. 1981). We cannot say, on the record before us, that Brazelton's performance was so deficient that it fell outside "the wide range of reasonable professional assistance" described in *Strickland*. 466 U.S. at 689.

**[6]** Because Brazelton's representation did not constitute ineffective assistance of counsel under the Sixth Amendment, it did not deprive Torres of his Fifth Amendment right to due process of law. Indeed, wholly aside from *Strickland* and the Sixth Amendment, Brazelton's conduct came nowhere close to constituting the sort of "egregious conduct" that would

"threaten[ ] the fairness of the proceeding" and deprive Torres of his Fifth Amendment right to due process. *Nehad*, 535 F.3d at 971. As we have explained, "ineffective assistance of counsel in a deportation hearing results in a denial of due process under the Fifth Amendment only when the proceeding is so fundamentally unfair that the alien is prevented from reasonably presenting her case." *Hernandez*, 524 F.3d at 1017; *accord Iturribarria v. INS*, 321 F.3d 889, 899 (9th Cir. 2003). Torres was not deprived of any opportunity to be heard, present evidence, or "press [his] case fully." *Lara-Torres*, 383 F.3d at 975. Torres simply conceded that he was an alien, a fact that he has never suggested is untrue. Torres has not pointed us to any authority for the proposition that voluntarily conceding a true fact can fundamentally undermine the fairness of a proceeding, nor are we aware of any. To the contrary, the process that Torres was due is "intended to provide a streamlined determination of eligibility to remain in this country," *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984), and that is the process he received.

## III

**[7]** Because Torres was not deprived of due process by the conduct of his lawyer, he is bound to his admissions of alienage and removability before the IJ. We therefore need not address whether Torres's written and oral admissions to the INS were admissible in Torres's removal proceedings under the confidentiality provision in section 245A, 8 U.S.C. § 1255a(c)(5)(A)(i). Torres's petition for review is DENIED.