# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANASTACIO HERNANDEZ-MANCILLA;
GUADELUPE SIERRA-GUZMAN,
                        *Petitioners,*

            v.

ERIC H. HOLDER JR., Attorney
General,
                        *Respondent.*

No. 06-73086

Agency Nos.
A75 758 626 / 625

OPINION

Appeal from the Board of Immigration Appeals

Submitted November 2, 2010*
Pasadena, California

Filed February 10, 2011

Before: Johnnie B. Rawlinson and Milan D. Smith, Jr.,
Circuit Judges, and Robert C. Jones** District Judge.

Opinion by Judge Jones

---

*The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Robert C. Jones, United States District Judge for the
District of Nevada, sitting by designation.

---

**COUNSEL**

John Ayala, Law Office of Cobos & Ayala, Los Angeles, California, for the petitioners-appellants.

Patrick J. Glen, United States Department of Justice, Civil Division, Washington, D.C., for the respondent-appellee.

---

**OPINION**

JONES, District Judge:

Petitioners Anastacio Hernandez-Mancilla and Guadalupe Sierra-Guzman are Mexican nationals who entered the United States illegally on June 15, 1991. (*See* Opening Br. 4). In February 2001, they engaged CB Immigration Services ("CB"), who informed them they were eligible to apply for lawful permanent resident status. (*Id.* 4-5). They paid CB approximately $5500, and CB submitted asylum applications on their behalf, resulting in the initiation of removal proceedings. (*Id.* 5). They received a notice to appear dated May 3, 2001. (*Id.*). The Immigration Judge ("IJ") ruled that Petitioners were ineligible for cancellation of removal because they had not maintained continuous presence in the United States for a ten-year span as required by 8 U.S.C. § 1229b(b)(1)(A). (*See id.*). Petitioners appealed to the Board of Immigration Appeals ("BIA"), which affirmed the IJ, ruling that the ten-year period under section 1229b could not be equitably tolled for the alleged fraud by CB, and that the statutory scheme permitting intermittent absences after a ten-year span but not providing a grace period to effectively reduce the ten-year requirement

where there were no intermittent absences did not violate Petitioners' equal protection rights. (*See id.* 6-7). Petitioners timely appealed. We have jurisdiction pursuant to 8 U.S.C. § 1252(b), and we affirm.

## I. Standard of Review

When "the BIA conducts an independent review of the IJ's findings, we review the BIA's decision and not that of the IJ." *Romero-Ruiz v. Mukasey*, 538 F.3d 1057, 1061 (9th Cir. 2008). We review the BIA's factual findings under the deferential substantial-evidence standard and uphold them unless the evidence compels a contrary result, *see Tawadrus v. Ashcroft*, 364 F.3d 1099, 1102 (9th Cir. 2004), but we review purely legal questions de novo, *see De Martinez v. Ashcroft*, 374 F.3d 759, 761 (9th Cir. 2004). Accordingly, we review equal protection challenges de novo. *See Sandoval-Luna v. Mukasey*, 526 F.3d 1243, 1246 (9th Cir. 2008). The BIA's interpretation and application of the immigration laws are generally entitled to deference, unless the interpretation "is contrary to the plain and sensible meaning of the statute." *Almaghzar v. Gonzales*, 457 F.3d 915, 920 (9th Cir. 2006).

## II. Equitable Tolling of the Ten-Year Continuous-Presence Requirement

**[1]** An alien who, inter alia, "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of . . . application" is eligible for cancellation of removal. 8 U.S.C. § 1229b(b)(1)(A). Even if an alien meets this threshold requirement, however, "[he] shall be considered to have failed to maintain continuous physical presence . . . if [he] has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days." *Id.* § 1229b(d)(2).[1] The accrual of continuous presence ends

---

[1]Congress first adopted a "brief, casual, and innocent absences" exception in 1986 in reaction to a Supreme Court opinion interpreting the con-

upon the earlier of service with a notice to appear or the commission of certain offenses. *Id.* § 1229b(d)(1).

**[2]** Petitioners entered the United States on June 15, 1991 and received the notice to appear on or about May 4, 2001. They therefore do not satisfy the ten-year continuous-presence requirement. They argue the end date should be equitably tolled because the agency they hired to assist them wrongly informed them that they would be eligible for relief, and they would not have come to the attention of the authorities had they not taken this bad advice. We reject this argument. *See Lara-Torres v. Ashcroft*, 383 F.3d 968, 973 (9th Cir. 2004), *amended by* 404 F.3d 1105 (9th Cir. 2005).

**[3]** In *Lara-Torres*, we ruled that immigration petitioners cannot base a plea for equity on circumstances external to the immigration procedures themselves. *See id.* ("The basic 'unfairness' of which the Petitioners complain is that they never would have been subject to removal proceedings had it not been for their reliance on Pineda's unfortunate immigration-law advice. This 'unfairness,' however, did not taint the 'fairness' of the hearing."). The argument Petitioners make here is materially identical to the argument the petitioners made in *Lara-Torres*. They complain that they were "duped" into entering removal proceedings by CB, and that the end date of the ten-year continuous-presence requirement should be equitably tolled from the date they received the notice to appear until the date they realized they had been "duped." In *Lara-Torres*, we stated broadly: "Removal pro-

---

tinuous presence requirement to permit no exceptions. *See* Pub. L. 99-603 § 245A(a)(3)(B), 100 Stat. 3395 (1986) ("An alien shall not be considered to have failed to maintain continuous physical presence in the United States . . . by virtue of brief, casual, and innocent absences . . . ."). Congress's amendment of the statute to its present form in 1996 standardized the exception. *See* 5 Charles Gordon et al., *Immigration Law and Procedure* § 64.04[3][b][I] (Matthew Bender, Rev. Ed. 2010) (citing former 8 U.S.C. § 1254(b)(2)).

ceedings do not become constitutionally unfair simply because they are precipitated in part by an attorney's advice instead of general INS delay, or because the illegal alien might believe that he could [have] avoid[ed] detection until eligible for another form of relief." *Id.* at 974.[2]

## III. Equal Protection

We review equal protection challenges to federal immigration laws under the rational basis standard and uphold them if they are "rationally related to a legitimate government purpose." *See Masnauskas v. Gonzales*, 432 F.3d 1067, 1071 (9th Cir. 2005). "Using such rational-basis review, a statute is presumed constitutional, and 'the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.' " *Id.* (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)).

The categories distinguished by the statutory scheme of § 1229b are: (1) aliens who have been in the United States for a span of ten or more years, but whose total presence is as little as nine-and-one-half years when intermittent absences are discounted; and (2) aliens who have been in the United States for a span of less than ten years, but whose total presence is greater than nine-and-one-half years when intermittent absences are discounted. Petitioners are members of the latter class. They must negate every conceivable basis for distinguishing them from members of the former class with respect to eligibility for cancellation of removal.

**[4]** In the view of Congress, it requires a ten-year span of living in the United States for a nonpermanent resident to acquire the connections with the nation that make it appropriate for the Attorney General to consider cancellation of

---

[2] *Lara-Torres* involved a due process-based argument. *See* 383 F.3d at 973. Here, the argument is for equitable tolling, but it relies on the same due process rationale. Equitable tolling is simply the remedy requested.

removal. An obvious reason for discounting some amount of intermittent absence is that an alien who is gone only for short periods of time—no more than 180 days total and never more than 90 days at a time—maintains his connection to the nation during the absence(s). Brief absences amounting to vacations or business trips are presumed by Congress not to constitute a change of residence. The absent alien still considers the United States to be his home during these periods, even if he is not a citizen and is present illegally. That is why intermittent absences "count" as if the alien were present during them. But an alien who has not been in the United States for a total span of ten years has not yet, in Congress's judgment, acquired the necessary connections to the nation to make consideration of cancellation of removal appropriate. Congress need not "count" up to 180 days before an alien actually arrives in the United States as a grace period where the alien has not "used" his 180 days of intermittent absences. It is perfectly rational to presume that an alien makes no connection to the nation before the date he first arrives. And although Petitioners might argue that Congress should count the days an alien spends in the United States after receiving a notice to appear, the two categories of aliens Petitioners identify are treated the same in this regard.

**[5]** Unlike aliens who have lived in the United States for ten or more years despite having taken vacations or business trips outside of the country, Petitioners had lived in the United States for fewer than ten years when they received their notices to appear. It is entirely rational for Congress to require a ten-year span with exceptions for intermittent absences as opposed to a total-number-of-days requirement.

## IV.   Conclusion

**[6]** Because equitable tolling is not available based on alleged unfairness exterior to immigration procedures themselves, *Lara-Torres*, 383 F.3d at 973, and because there is a rational basis for distinguishing between aliens who have

been present in the United States for different spans of time even where the aliens have spent the same total number of days in the United States, the judgment of the BIA is **AFFIRMED**.