**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARK CYRIL BROWN, *Petitioner*, | No. 11-71458 |
| v. | Agency No. A035-104-809 |
| LORETTA E. LYNCH, Attorney General, *Respondent*. | OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 7, 2014
Petition Denied in part and
Transferred in part to District Court August 18, 2014
District Court order November 24, 2015
Order for Supplemental Briefing January 22, 2016
San Francisco, California

Filed August 2, 2016

Before: Fortunato P. Benavides,[*] Richard C. Tallman,
and Richard R. Clifton, Circuit Judges.

Opinion by Judge Clifton

---

[*] The Honorable Fortunato P. Benavides, Senior Circuit Judge for the U.S. Court of Appeals for the Fifth Circuit, sitting by designation.

## SUMMARY[**]

### Immigration

Following transfer, in part, of the case to the District Court for the Central District of California to make findings of fact and conclusions of law concerning a claim to United States citizenship, the panel denied Mark Brown's petition for review of the Board of Immigration Appeals' dismissal of his appeal of a removal order.

The panel also held that the district court did not err in finding that Brown failed to establish that the former Immigration and Naturalization Service violated his procedural due process right to apply for citizenship in rejecting his applications for naturalization. The panel held that the district court did not clearly err in finding that neither INS employees nor policymakers acted with deliberate indifference toward Brown's attempts to naturalize.

### COUNSEL

Khaldoun Shobaki, and Michael Behrens (argued), Hueston Hennigan LLP, Los Angeles, California, for Petitioner.

Yamileth G. Davila (argued) and Nancy K. Canter, Trial Attorneys; Katherine E. Clark, Senior Litigation Counsel; Benjamin C. Mizer, Principal Deputy Assistant Attorney General; Office of Immigration Litigation, Civil Division,

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

United States Department of Justice, Washington, D.C.; for
Respondent.

**OPINION**

CLIFTON, Circuit Judge:

Mark Brown, a native and citizen of India, petitions for
review of the decision by the Board of Immigration Appeals
to dismiss his appeal from an order of removal. Brown argues
that the former Immigration and Naturalization Service
violated his constitutional rights by preventing him from
deriving citizenship through his parents and obstructing his
attempt to apply for citizenship on his own account. We
previously transferred Brown's case to the District Court for
the Central District of California to make findings of fact and
conclusions of law concerning his claim that he is entitled to
U.S. citizenship. *Brown v. Holder*, 763 F.3d 1141 (9th Cir.
2014). The district court concluded that Brown had not
established that his constitutional right to apply for
citizenship was violated. Having considered the district
court's order and the supplemental briefing filed thereafter by
the parties, we deny the petition.

## I. Background[1]

Brown was born in Madras, India, on July 4, 1968, and entered the United States lawfully as an immigrant along with his family on March 25, 1977. In April 1983, his father, Trevor Brown, and mother, Marjorie Brown, submitted petitions for naturalization. As part of those applications, each of Brown's parents filed separate N-400 forms. Marjorie also filed a separate N-604 form for derivative citizenship on Brown's behalf. Under then-applicable law, Brown was eligible for derivative citizenship if both of his parents naturalized before July 4, 1986, his eighteenth birthday. 8 U.S.C. § 1432(a)(1) (1982).

Trevor attended a citizenship interview with the INS on May 16, 1985, during which the agency approved his naturalization application. Trevor had listed Brown as one of his children on his N-400 and indicated that he wanted a certificate of citizenship for Brown. At the time of the interview, the INS examiner in charge of Trevor's application informed the family that Marjorie's application had been lost and that she would have to reapply. Trevor was naturalized six months later, on November 15, 1985.

The INS eventually located Marjorie's lost N-400 form. A handwritten note, dated June 11, 1985, was attached to the form, but exactly who found the application and how it was discovered remain unknown. What is known is that the INS

---

[1] We only recount here the facts relevant to the district court's determination that the INS did not violate Brown's constitutional rights. The factual and procedural background of Brown's case is explained in more detail in our previous opinion in this matter. *Brown*, 763 F.3d at 1144–46.

informed Marjorie on January 13, 1986 that her naturalization interview would take place on February 7, 1986. On the day of the interview, Marjorie completed a new N-400 and once again listed Brown as one of her children. However, though Marjorie indicated she wanted a "certificate of citizenship for those of my children who are in the U.S. and are under age 18 years that are named below," Marjorie did not write any names in the space provided. Following the interview, the examiner informed Marjorie that her application had been approved. Trevor met Marjorie at the door of her interview and asked about the status of Brown's derivative citizenship application. The examiner informed him that Brown had become a citizen through his parents. But Marjorie's naturalization ceremony did not take place until August 26, 1986, nearly two months after Brown's eighteenth birthday. As a result, Brown did not receive derivative citizenship.

Although Brown was no longer eligible for derivative citizenship after he turned eighteen, he remained eligible, at least initially, to apply for citizenship in his own right. On or around May 21, 1991, Brown and his father went to the INS office, and Brown filed his own N-400. Brown's application was then reviewed by an INS examiner. According to Trevor's recollection, the examiner stopped reviewing Brown's application as soon as he noticed Brown's answer to question six on the form, in which Brown had noted that both of his parents were U.S. citizens. At that point, according to Trevor, the examiner incorrectly informed Brown that there was no need for him to complete the N-400 because he was already a citizen.

Brown was convicted of a series of misdemeanors between 1987 and 1997. These crimes ultimately made him ineligible to obtain U.S. citizenship. At some undetermined

time, the INS placed Brown in removal proceedings. After his applications for asylum and withholding of removal were rejected by the Immigration Judge, he was ordered removed to India, where he currently resides.

Brown filed a timely petition for review before this court. *Brown*, 763 F.3d at 1146. We dismissed in part Brown's challenge to his order of removal because he had not exhausted his asylum and withholding of removal claims with the agency, thus depriving us of jurisdiction over those claims. *Id*. We also denied his claim that the government was estopped from denying his U.S. citizenship as well as his claim that he was statutorily entitled to U.S. citizenship. *Id.* at 1151–53. However, we held that Brown's constitutional claim that the INS violated his right to procedural due process in rejecting his applications for naturalization had potential merit, although the factual record was insufficiently clear to make a final determination. *Id.* at 1149–50. Accordingly, we held Brown's petition in abeyance and transferred his constitutional claim to the district court to make the necessary findings to establish whether or not Brown's constitutional rights had been violated. *Id.* at 1150.

After an initial hearing and discovery, the district court determined that an evidentiary hearing was unnecessary because the parties agreed on the essential facts. The court concluded that Brown had failed to show that INS employees or policymakers acted with a sufficiently culpable mental state to violate Brown's constitutional rights. We subsequently obtained supplemental briefing from the parties on the issue of whether Brown's petition should be denied in light of the district court's opinion.

## II. Discussion

In transferring this case to the district court, we held that Brown could succeed on his constitutional claim if he could demonstrate that the INS "arbitrarily and intentionally obstructed his application" or if it was "deliberately indifferent to whether his application was processed." *Id.* A finding of deliberate indifference requires "(1) 'a showing of an objectively substantial risk of harm'; and (2) 'a showing that the officials were subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed' and (a) 'the official actually drew that inference' or (b) 'that a reasonable official would have been compelled to draw that inference.'" *Henry A. v. Willden*, 678 F.3d 991, 1001 (9th Cir. 2012) (quoting *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 845 (9th Cir. 2010)). After reviewing the evidence submitted by the parties, the district court found that Brown had not established that the conduct of the INS amounted to either arbitrary and intentional obstruction or deliberate indifference under those standards.

Brown contends that the district court erred in its determination that the conduct of the INS, while potentially negligent or even grossly negligent, did not rise to the level of deliberate indifference.**²** Because a finding of deliberate indifference involves a factual inquiry, we review the district court's findings for clear error. *Mondaca-Vega v. Lynch*, 808 F.3d 413, 426–28 (9th Cir. 2015) (en banc) (applying a clear error standard of review to district court's factual

---

**²** Brown has not argued that the district court erred in finding that he had failed to establish that the agency had arbitrarily and intentionally obstructed his application.

finding that petitioner was not a U.S. national). Accordingly, the court must defer to the district court's findings unless it is "left with the definite and firm conviction that a mistake has been committed." *Id.* at 426.

As part of its findings, the district court concluded that (1) the INS employees in charge of Marjorie and Brown's naturalization applications did not act with deliberate indifference toward Brown's application; and (2) the INS policies in place at the time of Brown's naturalization application were not deliberately indifferent toward individuals in his circumstances. Brown argues that both of these findings by the district court were clearly erroneous. We disagree.

### A.  The conduct of INS employees

Brown argues that the INS employees managing his parents' applications exhibited deliberate indifference toward the risk that he would age out before receiving derivative citizenship on three separate occasions.

Brown first alleges that the INS officials handling Trevor's application acted in a deliberately indifferent manner by failing to immediately schedule Marjorie for a new interview once they became aware that the agency had lost her application. This argument fails because it is not clear that those officials either knew or should have known about the risk that their inaction posed to Brown's chances at citizenship. Trevor's INS interview took place on May 16, 1985, more than a year before Brown's eighteenth birthday. Although in retrospect we now know that Marjorie's application was not found and processed in time for Brown to receive derivative citizenship, Brown has not established that

it would have been reasonable for officials to assume that this was a necessary or even likely outcome of the decision not to schedule Marjorie a new naturalization interview as soon as possible.

Second, Brown contends that the INS employee or employees who eventually located Marjorie's application in July 1985 acted with deliberate indifference when they too failed to immediately schedule a new interview with Marjorie, instead waiting until February 1986. According to Brown, this delay was in violation of INS policies that required applications to be processed in the order in which they were received. Even assuming that this interpretation of INS policy is correct, "the mere failure of an agency to follow its regulations is not a violation of due process." *Brown*, 763 F.3d at 1148. With no evidence before it of exactly who found Brown's application and what they knew about the circumstances surrounding Marjorie's application, the district court did not clearly err in concluding that Brown could not establish that any individual INS employee acted with deliberate indifference.

The third alleged act of deliberate indifference involved the decision by INS employees not to expedite Marjorie's naturalization ceremony following the approval of her application in 1986. At the time of Brown's application, at least some INS policymakers, including the INS district director for naturalization, had the authority to expedite naturalization ceremonies. However, although the individuals directly in charge of Marjorie's application were plausibly aware of the risk posed to Brown by failing to expedite her naturalization ceremony, Brown has not shown either that those individuals possessed the authority to expedite ceremonies or that anyone who did have such authority had

been made aware of his situation. Accordingly, the failure to expedite Brown's ceremony did not amount to deliberate indifference.

###### *B.  INS policies*

In the context of claims under 42 U.S.C. § 1983, it has long been established that plaintiffs can demonstrate a constitutional violation by showing that the policies of a municipality or government agency violated their rights. *See Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1185 (9th Cir. 2002). "A 'policy' is 'a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) (per curiam) (quoting *Oviatt ex rel Waugh v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)). A plaintiff can prevail by pointing to both policies of "action" and of "inaction." *Id*. Brown argues that at the time of the naturalization applications of his parents and of Brown himself, the INS had policies in place that exhibited deliberate indifference toward his opportunity to naturalize.

 Brown first alleges that the INS had a deliberate policy of refusing to expedite the naturalization applications of individuals who had children at risk of aging out. However, he has put forward no evidence that any INS policymaker was ever made aware that such a risk existed, either because there had been previous instances of aging out or because they were notified by Brown's family or by someone in a similar situation. In previous instances in which we have held that a policy of inaction amounted to a constitutional violation, we have required evidence that policymakers were aware or

should have been aware of the serious risks posed by their failure to act. *See, e.g. Gibson*, 290 F.3d at 1191–92 (evidence established that county officials were aware of the risks of failing to immediately treat prisoners exhibiting manic symptoms); *Fairley*, 281 F.3d at 918 (chief of police knew that it was "not uncommon" for individuals to be arrested on the wrong warrant but failed to institute procedures to alleviate the problem). The district court did not err in rejecting this argument.

Brown also argues that the INS failed to properly train its employees to handle naturalization applications by individuals with U.S.-citizen parents. According to Brown, the agency failed to instruct its employees to compare the applicant's birth date to the date of his or her parents' naturalization to determine whether an applicant had already received derivative citizenship. The evidence presented to the district court belies this accusation. An INS officer employed at the time of Brown's application testified that the INS had policies in place to train examiners to ask applicants questions about their or their parents' citizenship status upon discovering that one or both of an applicant's parents were U.S. citizens. Although the examiner in charge of Brown's 1991 naturalization application may have acted contrary to those policies by incorrectly informing Brown that he had received derivative citizenship, there is no evidence that INS policymakers themselves acted with deliberate indifference toward naturalization applicants with U.S.-citizen parents.[3]

---

[3] Brown has not argued that the INS examiner who conducted his 1991 interview violated his constitutional rights.

## III.    Conclusion

Brown has not demonstrated that the district court clearly erred in finding that neither INS employees nor INS policymakers acted with deliberate indifference toward his attempts at naturalization. Accordingly, we deny Brown's petition for review because he has not shown that the INS violated his constitutional rights.

**PETITION FOR REVIEW DENIED.**