**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| SAZAR DENT, aka Cesar Augusto Jimenez-Mendez, *Petitioner-Appellant*, <br><br> v. <br><br> JEFFERSON B. SESSIONS III, Attorney General, *Respondent-Appellee.* | No. 17-15662 <br><br> D.C. No. 2:10-cv-02673-GMS <br><br><br> OPINION |

Appeal from the United States District Court
for the District of Arizona
G. Murray Snow, District Judge, Presiding

Argued and Submitted July 10, 2018
San Francisco, California

Filed August 17, 2018

Before: Susan P. Graber and Richard C. Tallman, Circuit
Judges, and Ivan L.R. Lemelle,* District Judge.

Opinion by Judge Graber

---

*The Honorable Ivan L.R. Lemelle, United States District Judge for the Eastern District of Louisiana, sitting by designation.

## SUMMARY[**]

### Immigration

The panel denied a petition for review insofar as it raised due process claims related to the district court's rejection of Sazar Dent's United States citizenship claim, and granted the petition and remanded to the Board of Immigration Appeals insofar as the BIA ruled that Dent's conviction for third-degree escape under Arizona Revised Statutes § 13-2502 is a crime of violence aggravated felony.

Dent was born in Honduras, but was admitted to the United States on the basis of being adopted by a United States citizen. His adoptive mother filed an application for naturalization for Dent, but that application was terminated after Dent and his mother missed scheduled interviews and he turned 18. Dent then filed his own naturalization application, but it was denied for failure to prosecute. After criminal convictions, Dent was placed in removal proceedings and the immigration judge and BIA found him removable for a controlled substance offense, and for having been convicted of an aggravated felony based on his conviction for third-degree escape.

Dent petitioned for review with this court, which transferred the case to the District Court of Arizona for a hearing on his citizenship claim. The district court determined that Dent was not a United States citizen and

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

ultimately granted the government's motion for summary judgment.

As a preliminary matter, the panel concluded that Dent had standing to assert due process and equal protection claims on behalf of his mother.

Dent claimed that the applicable citizenship statute, 8 U.S.C. § 1433 (1982), violated his mother's rights under the Fifth Amendment's Equal Protection Clause because the statute required citizen-parents of foreign-born, adopted children to petition for naturalization of their children, while biological parents, as well as adoptive parents who naturalized after adoption, could confer citizenship on their children automatically, without petitioning.

The panel explained that, under *Sessions v. Morales-Santana*, 137 S. Ct. 1678 (2017), Dent's equal protection claims do not necessarily receive rational basis review simply because they are in the immigration context; rather, when a petitioner presents a claim for citizenship, his or her equal protection claims are treated the same as they would be in a non-immigration case.

However, the panel held that rational basis review applied to Dent's equal protection claims because he failed to identify any protected class. The panel further held that, because a legitimate governmental interest is rationally related to § 1433's requirement that citizen-parents petition to naturalize their adopted, foreign-born children, § 1433 does not violate the Fifth Amendment's Equal Protection Clause.

The panel also rejected Dent's due process claims. The panel held that the district court correctly concluded that the

former Immigration and Naturalization Service was not deliberately indifferent to Dent's mother's application for his citizenship, or his own adult application for citizenship. The panel also concluded that Dent could not establish prejudice.

Finally, the panel held that the BIA erred in concluding that third-degree escape under Arizona Revised Statutes § 13-2502 is a crime of violence and, therefore, an aggravated felony. Comparing the generic federal definition of "crime of violence" under 18 U.S.C. § 16 to the Arizona statute, the panel held that Arizona third-degree escape is not crime of violence because it does not necessarily involve the "physical force" required by § 16(a). The panel also observed that the Supreme Court recently declared, in *Sessions v. Dimaya*, 138 S. Ct. 1204, 1223 (2018), that § 16(b) is unconstitutionally vague and, therefore, that subsection cannot be the basis for an aggravated felony.

Noting that Dent is still removable for a controlled substance offense, the panel remanded the case to the BIA for a new hearing to address Dent's request for cancellation of removal.

## COUNSEL

Anne R. Traum (argued), Supervising Attorney; Andrew Clark, Scott Cardenas, Beatriz Aguirre, and Sabrina Clymer, Student Attorneys; Thomas & Mack Legal Clinic, William S. Boyd School of Law, University of Nevada, Las Vegas, Nevada; for Petitioner-Appellant.

Katherine E. Clark (argued) and Russell J.E. Verby, Senior Litigation Counsel; Papa Sandhu, Assistant Director; Chad A. Readler, Acting Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent-Appellee.

**OPINION**

GRABER, Circuit Judge:

Petitioner Sazar Dent, a native and citizen of Honduras, appeals the summary judgment entered in favor of Respondent Attorney General Sessions on the question of Petitioner's citizenship. He also challenges the Board of Immigration Appeals' ("BIA") conclusion that Arizona third-degree escape is an aggravated felony. We deny the petition insofar as it raises due process and equal protection claims related to the citizenship determination; but we grant and remand insofar as the BIA ruled that the escape conviction is an aggravated felony.

FACTUAL AND PROCEDURAL BACKGROUND[1]

Petitioner was born in Honduras in 1967. He was admitted to the United States in early 1981, when he was 13 years old, on the basis of his then-pending adoption by

---

[1] With respect to the facts surrounding the due process claim, which the district court resolved on summary judgment, we view the facts in the light most favorable to Petitioner. *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 969 (9th Cir. 2003).

Roma Dent, a United States citizen. The adoption was finalized later in 1981.

In January of 1982, the former Immigration and Naturalization Service ("INS") received an application filed by Petitioner's adoptive mother seeking to naturalize Petitioner (who was then 14 years old) as a United States citizen. Petitioner and his mother lived in Arkansas. The INS transferred the application to its New Orleans office because there was no office in Arkansas and because the Memphis office was overworked. More than 200,000 naturalization petitions were filed with the INS in 1982. At that time, it typically took about a year and a half, after the filing of an application for a child's naturalization petition, to schedule an interview.[2]

The INS scheduled an interview on Roma Dent's application for August 4, 1983, less than 17 months after it was filed. The INS arranged for the interview to be held in Arkansas, near the Dents' home. But neither Petitioner nor his mother appeared at the appointed time and place.

Petitioner's mother then asked for a new interview date, explaining that Petitioner would be in Honduras "for 6 months probably." The INS obliged the request, setting a second interview date of March 13, 1984. There is no evidence that the INS knew that Petitioner would still be

---

[2] Petitioner contests an INS official's testimony that, at that time, it typically took 18 months to schedule an interview. But, as proof, he offers only data about processing times in 1986, four years later. That evidence is insufficient to create a genuine issue of material fact. *See Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1048 (9th Cir. 1995) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." (internal quotation marks omitted)).

abroad at that time.  Again, neither he nor his mother appeared.

In August of 1984, Petitioner's mother contacted the INS about the status of the naturalization application.  The INS responded:

> So good to hear from you.  Am unable to locate Sazar['s] records in our office as I do not have his Alien card number.  Also include Sazar['s] complete name and date of birth.

> We will do all we can to get him his citizenship.

Petitioner's mother wrote the requested information on the form, adding:  "Is 16 will be 17 Nov 15."  That note was postmarked August 27, 1984.

On June 10, 1985, the INS placed the following note in Petitioner's file:

> Joan of U.S. Court Clerk's Office of Fort Smith, AR called this date to inquire about Sazar Dent's status.  She advised he had been in a lot of trouble, had run away from several boy's homes, etc.  They (the authorities) were hoping they could "deport" him.  Advised her that he was a legal permanent resident; having been adopted by a U.S. citizen.

The INS did not schedule any additional interviews on the application of Petitioner's mother.  When Petitioner turned 18, he aged out of his mother's application, but he became

eligible to naturalize on his own, as an adult. 8 U.S.C. §§ 1433(a), 1445(b) (1980).

The INS scheduled an interview for Petitioner on February 25, 1986. He missed that appointment, but the INS "squeezed" him in the next day. At that interview, the INS deemed Roma Dent's application "nonfiled," thereby terminating that application. Also on February 26, 1986, Petitioner filed his own naturalization application and petition. The INS immediately recommended approval of the petition. In 1986, when the INS determined that an applicant was eligible to naturalize, the applicant would file a petition with the local federal district court and the INS would recommend its approval. Here, Petitioner filed a petition in the District Court for the Western District of Arkansas on the day it was approved by the INS. All that remained for him to do was to (1) submit to a preliminary examination by the INS, (2) appear in a district court for a final determination on naturalization, and (3) take the oath of naturalization. 8 U.S.C. §§ 1445–48 (1986).[3]

Thereafter, the INS scheduled Petitioner for the preliminary examination on at least two different dates between 1986 and 1987. He did not show up for any of the appointments. Although at least one notice was returned to sender, Petitioner admitted that he received at least one of the

---

[3] At the time Roma Dent's petition to naturalize Petitioner was pending, the naturalization process for adopted children was essentially the same as for a naturalizing adult. A parent seeking her child's naturalization had to appear for a preliminary examination, which would be followed by a district court's positive determination and the child's taking of the oath of naturalization. 8 U.S.C. §§ 1433(a), (b); 1446 (b), (d); 1448(a) (1982).

notices, and the INS sent all the notices to addresses that Petitioner had provided.

Because Petitioner had failed to appear for at least two scheduled interviews on his own petition, the INS scheduled a final hearing for March 23, 1989, at which it would recommend denial of the application for failure to prosecute. The INS sent notice of that hearing to the address at which Petitioner had received one of the 1986 notices, which also was Petitioner's address of record, but the notice was returned to sender. Petitioner admitted that he had failed to notify the INS of his changes of address and that he had failed to appear for the final hearing. The district court denied his naturalization petition on March 23, 1989, for failure to prosecute.

In 2003, Petitioner was convicted of two Arizona crimes: possession or use of narcotics (Ariz. Rev. Stat. §§ 13-3401, 3408), and third-degree escape (Ariz. Rev. Stat. § 13-2502). Several months later, the Department of Homeland Security ("DHS") initiated removal proceedings. DHS charged that Petitioner was removable under 8 U.S.C. § 1227(a)(2)(A)(iii), on the ground that the escape conviction is a crime of violence and, therefore, an aggravated felony. Later, DHS added a charge that Petitioner was removable under 8 U.S.C. § 1227(a)(2)(B)(i), on the ground that possession of narcotics is a controlled substance offense.

After the immigration judge and the BIA concluded that Petitioner was removable, he petitioned for review with this court, bringing a citizenship claim, among others. We transferred the case to the District of Arizona "for a new hearing on [his] nationality claim." *Dent v. Holder*, 627 F.3d 365, 376 (9th Cir. 2010) (alteration in original). The district

court determined that Petitioner was not a citizen, *Dent v. Holder*, No. 2:10-CV-02673-TMB, 2013 WL 11311230, at *6 (D. Ariz. Sept. 30, 2013), and he appealed to this court. We vacated the district court's determination and remanded the case so that the district court could consider his due process claim in light of intervening authority. *Dent v. Lynch*, 606 F. App'x 405 (9th Cir. 2015) (unpublished). The district court rejected Petitioner's due process claim and granted Respondent's motion for summary judgment, while denying Petitioner's motion for summary judgment. *Dent v. Sessions*, 243 F. Supp. 3d 1062, 1074 (D. Ariz. 2017). Petitioner timely appeals.

## DISCUSSION[4]

### A. *Standing*

Petitioner has standing to assert due process and equal protection claims on his mother's behalf. An individual has third-party standing when "[(1)] the party asserting the right has a close relationship with the person who possesses the right [and (2)] there is a hindrance to the possessor's ability to protect his own interests." *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1689 (2017) (internal quotation marks omitted). In *Morales-Santana*, the Supreme Court held that the petitioner—a non-citizen asserting the equal protection rights of his late, United States citizen father—had standing

---

[4] We review all issues de novo. *See Rendon v. Holder*, 764 F.3d 1077, 1082 (9th Cir. 2014) (providing de novo standard for determining whether a prior conviction is an aggravated felony); *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1086 (9th Cir. 2013) (providing de novo standard for summary judgment); *Hernandez-Mancilla v. Holder*, 633 F.3d 1182, 1184 (9th Cir. 2011) (providing de novo review for equal protection claims).

to vindicate his father's rights. *Id.* The Court reasoned that he "easily satisfie[d] the 'close relationship' requirement." *Id.* And, because the petitioner's father had died years before the petitioner brought the case, he also satisfied the "hindrance" requirement. *Id.*

In this case, Petitioner—as his mother's adopted child—satisfies the close relationship requirement. And, like the petitioner in *Morales-Santana*, Petitioner's mother died years ago, so he also satisfies the hindrance requirement.

B. *Equal Protection*

Petitioner brings a facial challenge to 8 U.S.C. § 1433 (1982), a citizenship statute that was in effect when he began the naturalization process. He contends that § 1433 violated his mother's rights under the Fifth Amendment's Equal Protection Clause. That statute required citizen-parents of foreign-born, adopted children to petition for their naturalization. *Id.* § 1433(c). Because biological parents, as well as naturalizing parents of adopted children, could confer citizenship on their children automatically, without petitioning, Petitioner contends that § 1433 violated his mother's equal protection rights.[5]

1. *Level of Scrutiny*

*Morales-Santana* dictates that Petitioner's equal protection claims do not necessarily receive rational basis

---

[5] Petitioner further argues that—because § 1433 was unconstitutional—he is entitled to citizenship as a remedy. Because we hold that § 1433 was constitutional, we need not consider what remedy would be appropriate were the statute unconstitutional.

review simply because they are in the immigration context. 137 S. Ct. at 1689, 1693–94. Before the Supreme Court decided *Morales-Santana*, we would have followed *Fiallo v. Bell*, 430 U.S. 787 (1977). In *Fiallo*, the petitioner challenged entry requirements for non-citizens, which he claimed discriminated on the basis of sex and legitimacy. 430 U.S. at 790, 794. Because issues related to admission of non-citizens "have been recognized as matters solely for the responsibility of the Congress and wholly outside the power of [the] Court to control," the Supreme Court applied a standard of review similar to rational basis review. *Id.* at 794, 796 (internal quotation marks omitted). We have applied *Fiallo*'s standard and looked for only a "facially legitimate and bona fide reason" to support a statutory distinction, even when the relevant statute governs who is and is not a citizen rather than admission of non-citizens. *See, e.g.*, *Wauchope v. U.S. Dep't of State*, 985 F.2d 1407, 1414 (9th Cir. 1993).

But the Supreme Court clarified in *Morales-Santana* that, when the petitioner presents a claim of *citizenship*, the proper standard for a gender discrimination claim is heightened scrutiny, just as it would be in the non-immigration context. 137 S. Ct. at 1689, 1693–94. The Court reasoned that, because the petitioner "claim[ed] he is, and since birth has been, a U.S. citizen," *Fiallo*'s "minimal scrutiny" standard for a case involving entry preferences for non-citizens was distinguishable. *Id.* at 1693–94. Under *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc), when the Supreme Court "undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable," the Court's decision effectively overrules this circuit's decision. That is the case here. *Morales-Santana* holds that, when a petitioner presents a claim for citizenship, his or her equal protection claims are

treated the same as they would be in a non-immigration case. A challenged law does not receive minimal scrutiny merely because it is related to immigration.

But that conclusion does not *automatically* result in heightened scrutiny. Instead, *Morales-Santana* clarifies that heightened scrutiny is not *foreclosed* simply because Petitioner's claim is in the immigration context. We therefore examine each category as we would in a non-immigration equal protection claim.

### a.  *Citizenship Distinction*

Petitioner, on his mother's behalf, claims that § 1433 treated citizens worse than non-citizens because citizens who adopted children had to petition for their children's citizenship, whereas adoptive parents who naturalized after the adoption could confer citizenship on their children automatically. But the statute does not distinguish between citizens and non-citizens. In all cases, a parent must be a citizen in order to confer citizenship on an adopted child. Instead, the statute distinguishes between citizens who were already citizens *before* adopting children and citizens who naturalized *after* adopting children. Neither is a protected class. Accordingly, rational basis review applies to that distinction. *See United States v. Juvenile Male*, 670 F.3d 999, 1009 (9th Cir. 2012) (applying "rational basis review for the purpose of equal protection analysis" where the defendants "failed to establish membership in a recognized protected class").

b.  *Adoptive-Parent Distinction*

Petitioner also claims that § 1433 treated adoptive parents worse than biological parents because biological parents could confer citizenship on their children automatically, whereas adoptive parents had to petition for their children to become citizens.  Adoptive parents are not a protected class and, therefore, rational basis review applies to that distinction as well.  *See id.*  Petitioner argues that heightened scrutiny applies because § 1433 interfered with his mother's fundamental liberty interest "in the care, custody, and management of [her] child."  *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (considering a statute that permitted "forced dissolution of . . . parental rights" and thus threatened parents' "vital interest in preventing the irretrievable destruction of their family life").  But to be eligible for the naturalization process at issue in § 1433, the parent must have already adopted the child, and the child must already reside with the parent in the United States.  Section 1433, therefore, did not disrupt parents' interest in the care, custody, and management of their children.  Accordingly, disparate treatment of adoptive parents versus biological parents receives rational basis review.  *See Aleman v. Glickman*, 217 F.3d 1191, 1200 (9th Cir. 2000) (explaining that rational basis review applies if a classification does not involve a fundamental right or protected class).

2.  *Rational Basis Review*

To survive rational basis review, a statute must be "rationally related to a legitimate government purpose." *Hernandez-Mancilla v. Holder*, 633 F.3d 1182, 1185 (9th Cir. 2011) (internal quotation marks omitted).  "Using such rational-basis review, a statute is presumed constitutional, and

the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Id.* (internal quotation marks omitted). We "are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends." *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 321 (1993).

Following the Second Circuit, we conclude that "the requirement of an affirmative act to secure derivative citizenship is . . . rationally related to the legitimate aim of deterring immigration fraud." *Colaianni v. INS*, 490 F.3d 185, 189 (2d Cir. 2007) (per curiam). Requiring adoptive parents to petition for their children's naturalization helped ensure that the child had a genuine relationship with the parent. Biological parents, by definition, need not provide assurance of a genuine parental relationship. And the intensive naturalization process gave the government the opportunity to inquire into naturalizing parents' relationships with their previously adopted children, even if the parents did not list their children on their application. Further, although citizen parents first had to go through a visa process for their foreign-born, adopted children, the fact that there were other safeguards against fraud is irrelevant under rational basis review. Because a legitimate governmental interest is rationally related to § 1433's requirement that citizen parents petition to naturalize their adopted, foreign-born children, we conclude that § 1433 does not violate the Fifth Amendment's Equal Protection Clause.

## C.  *Due Process*

Petitioner also contends that the INS violated his due process rights by acting with deliberate indifference, both

during the processing of his mother's application on his behalf, as a child, and during the processing of his own application, as an adult. A petitioner can succeed on a due process claim by showing that the INS was "deliberately indifferent to whether his application was processed," *Brown v. Holder*, 763 F.3d 1141, 1150 (9th Cir. 2014) ("*Brown I*"), and that he or she suffered prejudice, "which means that the outcome of the proceeding *may have been affected* by the alleged violation," *Zolotukhin v. Gonzales*, 417 F.3d 1073, 1076 (9th Cir. 2005) (internal quotation marks omitted).

Under *Brown v. Lynch*, 831 F.3d 1146 (9th Cir. 2016) ("*Brown II*"), to establish deliberate indifference in the immigration context, a petitioner must present:

> (1) a showing of an objectively substantial risk of harm; and (2) a showing that the officials were subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and (a) the official actually drew that inference or (b) that a reasonable official would have been compelled to draw that inference.

*Id.* at 1150 (internal quotation marks omitted). Even gross negligence does not amount to deliberate indifference. *Brown I*, 763 F.3d at 1150 n.5. Nor does an agency's failure to comply with its own regulations amount to deliberate indifference. *Id.* at 1148.

Several weeks after we decided *Brown II*, we decided *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc), *cert. denied*, 137 S. Ct. 831 (2017). There, we stated—in the prison context—that, in evaluating due

process deliberate indifference claims, we inquire whether "a reasonable officer in the circumstances [would appreciate] the high degree of risk involved." *Id.* at 1071. That is, we implemented an objective standard.

Petitioner argues that the current test under *Brown II* provides a subjective standard for deliberate indifference in the immigration context and that we should revise that standard after *Castro*. But we need not decide either of those issues because Petitioner's due process claims fail under either a subjective or an objective standard.

1. *Childhood Application*

a. *No Deliberate Indifference*

The district court did not err in ruling that the INS was not deliberately indifferent to whether Petitioner's mother's application for his citizenship was processed. As the district court noted, the INS took steps to ensure that Petitioner could complete the naturalization process by scheduling two interviews when he was 15 and 16 years old—several years away from the cutoff of 18. Had Petitioner attended either interview, he would have become a citizen. Nor is there any evidence that the INS knew, or should have known, that Petitioner was in Honduras when it scheduled the first interview. Thus, Petitioner "has not established that it would have been reasonable for officials to assume that [aging out] was a necessary or even likely outcome of the decision not to schedule" an interview earlier. *Brown II*, 831 F.3d at 1151. And Petitioner's mother's note to the INS that he was 16 and would be 17 in November does not mean that the INS acted with deliberate indifference by not expediting the application. Petitioner introduced no evidence that the INS official with

whom his mother corresponded had the authority to expedite the application. Accordingly, the agency did not act with deliberate indifference.**[6]**

b.  *No Prejudice*

Even if the INS *did* act with deliberate indifference, Petitioner's due process claim fails because he cannot demonstrate that he suffered prejudice. *See Zolotukhin*, 417 F.3d at 10767 (requiring prejudice). Once the INS *approved* Petitioner's own application for citizenship (as an adult) in 1986, his mother's earlier petition became irrelevant. Nothing that happened while processing his mother's petition caused or contributed to Petitioner's failure to complete the adult naturalization process following the rapid approval of his application for citizenship. Had the adult naturalization process been more onerous than the child naturalization process, Petitioner could have suffered prejudice because the INS's errors would have resulted in a more burdensome naturalization process. But the processes were closely similar and equally burdensome. Petitioner's due process claim for the childhood application, therefore, also fails for lack of prejudice.

---

**[6]** Petitioner also argues that the note in his file, which stated that "Joan" from the U.S. Court Clerk's Office of Fort Smith had called and said that the "authorities" wanted to deport Petitioner, shows that the INS acted with an improper motive in failing to process his childhood application. But the note does not demonstrate that the INS—or even the court clerk's office—wanted to deport Petitioner or prevent him from becoming a citizen. In fact, it reveals that the INS maintained that Petitioner could *not* be deported for running away from boys' homes.

2.  *Adult Application*

a.  *No Deliberate Indifference*

The district court correctly concluded that the INS was not deliberately indifferent to Petitioner's adult application for citizenship.  The INS attempted to schedule several hearings for Petitioner, but he failed to update the INS with changes to his mailing address.  Though the INS sent one of the hearing notices to an outdated address and failed to follow several of its usual practices when Petitioner was unreachable, there is, at most, evidence of gross negligence, which does not meet the test for deliberate indifference. *Brown I*, 763 F.3d at 1150 n.5; *Brown II*, 831 F.3d at 1150.

b.  *No Prejudice*

Petitioner cannot establish prejudice for his adult application claim either.  His own failures to update the INS with his changes of address and to appear for his hearings were the cause of his not becoming a citizen.  Accordingly, he cannot establish prejudice, and his due process claim must fail for that reason as well.

D.  *Aggravated Felony*

Finally, we hold that the BIA erred in concluding that third-degree escape under Arizona Revised Statutes section 13-2502 is a crime of violence and, therefore, an aggravated felony that would make Petitioner removable.  "To assess whether a state conviction qualifies as an aggravated felony, we generally employ the 'categorical approach' to determine whether the state offense matches the 'generic' federal definition of the pertinent offense . . . :  here, a crime of

violence under 18 U.S.C. § 16(a) or (b)." *Ramirez v. Lynch*, 810 F.3d 1127, 1130–31 (9th Cir. 2016). Under the categorical approach, we compare "the elements of the statute of conviction with a federal definition of the crime to determine whether conduct proscribed by the statute is broader than the generic federal definition." *Id.* at 1131 (internal quotation marks omitted). "[W]e examine what the state conviction *necessarily* involved, not the facts underlying the case, and so must presume that the conviction rested upon nothing more than the least of the acts criminalized." *Id.* (internal quotation marks and brackets omitted). "We then determine whether even those acts are encompassed by the generic federal offense." *Id.* (internal quotation marks omitted).

Here, the generic federal offense is a "crime of violence" under 18 U.S.C. § 16, which provides:

>     The term "crime of violence" means—
>
>     (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
>     (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Arizona's third-degree escape statute provides:

> A.  A person commits escape in the third degree if, having been arrested for, charged with or found guilty of a misdemeanor or petty offense, such person knowingly escapes or attempts to escape from custody.

> B.  Escape in the third degree is a class 6 felony.

Ariz. Rev. Stat. § 13-2502.

Examining the two texts, it is clear that Arizona third-degree escape does not necessarily involve the "physical force" required by § 16(a).  *See Chavez-Solis v. Lynch*, 803 F.3d 1004, 1009 (9th Cir. 2015) (noting that, in determining whether a state crime qualifies as a crime of violence, we may rely solely on statutory text to establish the statute as overly inclusive).  And the Supreme Court recently declared, in *Sessions v. Dimaya*, 138 S. Ct. 1204, 1223 (2018), that § 16(b) is unconstitutionally vague and, therefore, cannot be the basis for an aggravated felony.  Accordingly, third-degree escape under Arizona Revised Statutes § 13-2502 is not a crime of violence, nor an aggravated felony.  We grant the petition on that issue.

Because Petitioner has a prior conviction for a controlled substance offense, he is still removable under 8 U.S.C. § 1227(a)(2)(B)(i).  We ordered in *Dent* that, "[i]f the district court determines that [Petitioner] is not a citizen of the United States, then the case should be remanded to the BIA for a new hearing after production of the A-file in full."  627 F.3d at 376.  As Respondent has already produced Petitioner's A-file,

*Dent*, 2013 WL 11311230, at \*6, we remand the case to the BIA for a new hearing to address Petitioner's request for cancellation of removal.

**Petition DENIED in part; GRANTED and REMANDED in part.** The parties shall bear their own costs on appeal.