**PRECEDENTIAL**

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

————

No: 18-2192

————

EDWIN RAFAEL CEPEDA CABRERA,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,

Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
Immigration Judge: Honorable John P. Ellington
(BIA-1 : A041-745-875)

Argued on February 6, 2019

(Opinion filed: April 19, 2019)

Before:  HARDIMAN, SCIRICA and RENDELL, *Circuit Judges*

Raymond G. Lahoud **(ARGUED)**
Norris, McLaughlin & Marcus
515 West Hamilton Street
Suite 502
Allentown, PA   18101
          *Counsel for Petitioner*

Stephanie E. Beckett **(ARGUED)**
United States Department of Justice
Office of Immigration Litigation
P. O. Box 878
Ben Franklin Station
Washington, DC  20044
          *Counsel for Respondent*

---

O P I N I O N

---

RENDELL, *Circuit Judge*:

Edwin Rafael Cepeda Cabrera was born in the Dominican Republic in 1979 and admitted to the United States as a lawful permanent resident in 1988.  Two years later, he was adopted by a natural born U.S. citizen, Randolph Benn Attenborough.  Had he been Attenborough's biological child, then Section 309 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1409, would have provided him a pathway to obtain automatic derivative citizenship.  But since he is an adopted child, the

2

statute does not apply to him and his road to citizenship is more arduous. In his view, this disparate treatment between adopted and biological children violates the guarantee of equal protection under the Fifth Amendment's Due Process Clause. We disagree and will deny his petition for review.

Cabrera advances his equal protection claim in an effort to stop his removal from the United States. He was still lawfully residing in the United States in 2014 when he pled guilty to federal charges of conspiracy to possess with intent to distribute heroin and was sentenced to 36 months' imprisonment. Upon his release, Cabrera was served with a Notice to Appear for removal proceedings. This Notice leveled two charges of removability: his conviction of an aggravated felony, 8 U.S.C. § 1227(a)(2)(A)(iii), and his conviction of a controlled substance offense, *id.* § 1227(a)(2)(B)(i). In response, Cabrera disputed the factual allegation made in the Notice to Appear that he was not a U.S. citizen.[1] He argued, on constitutional grounds, that he was entitled to derivative citizenship through his adoptive father and, because he was entitled to U.S. citizenship, he could not be removed. The Immigration Judge held that he lacked jurisdiction to hear this constitutional claim and ordered Cabrera removed to the Dominican Republic. The Board of Immigration Appeals affirmed the IJ's order. Cabrera then filed this petition for review.[2]

---

[1] Apart from his removal proceedings, Cabrera also made claims for citizenship in two Applications for Certification of Citizenship ("Form N-600") with the U.S. Citizenship and Immigration Services ("USCIS"). USCIS denied both of his Form N-600 applications.

[2] We have jurisdiction to review constitutional claims raised in a petition for review pursuant to 8 U.S.C. § 1252(a)(2)(D). We

When reviewing citizenship claims, we apply the laws that were in effect at the time of the relevant event—*i.e.*, the petitioner's birth, adoption, or eighteenth birthday. *See Bagot v. Ashcroft*, 398 F.3d 252, 257 n.3 (3d Cir. 2005). Here, both parties agree that the challenged law, INA Section 309, was effective at the time of all relevant events. Section 309 allows for a foreign-born person born out of wedlock to a U.S. citizen father to obtain automatic derivative citizenship if several conditions are met, including that the person establishes a blood relationship with the father and that the father was a U.S. national at the time of the child's birth. *See* 8 U.S.C. § 1409. The gravamen of Cabrera's claim is that he, as an adopted child of a U.S. citizen, could not avail himself of the system of automatic derivative citizenship established in Section 309. Instead, Attenborough would have had to apply for citizenship on Cabrera's behalf before his eighteenth birthday via the procedures established in a different statute, Former INA Section 322, 8 U.S.C. § 1433 (1994), *amended by* Child Citizenship Act of 2000 § 102(a).[3] This disparate treatment on the basis of his adoptive status, he argues, violates his right to equal protection under the Fifth Amendment's Due Process Clause.

_____

review constitutional claims *de novo*. *See Dia v. Ashcroft*, 353 F.3d 228, 238 (3d Cir. 2003).

[3] Cabrera also references, but does not challenge, the procedures established in Former INA §§ 320 and 321. These statutes provided for automatic naturalization of an alien child upon the naturalization of one or both of that child's parents. Adopted alien children, however, faced additional requirements under these statutes. Former INA § 321, 8 U.S.C. § 1432 (1994), *repealed by* CCA § 103(a).

4

The Fifth Amendment's Due Process Clause "contains the same guarantee of equal protection under law as that provided in the Fourteenth Amendment." *United States v. Pollard*, 326 F.3d 397, 406 (3d Cir. 2003). To prevail on his equal protection claim, Cabrera must show that the "Government has treated [him] differently from a *similarly* situated party *and* that the Government's explanation for the differing treatment does *not* satisfy the relevant level of scrutiny." *Real Alts., Inc. v. Sec'y Dep't of Health & Human Servs.*, 867 F.3d 338, 348 (3d Cir. 2017) (emphasis in original). Classifications involving "fundamental personal rights" or "suspect distinctions such as race, religion, or alienage" are subject to heightened scrutiny. *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976). But classifications "neither involving fundamental rights nor proceeding along suspect lines" are subject to the more deferential rational-basis review. *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993).

We have not had occasion to determine what standard of review applies to claims of disparate treatment on the basis of adoptive status in the citizenship context. Both Cabrera and the Government argue that we should apply rational-basis review. We have applied this standard to distinctions on the basis of adoptive status in the social security context. *See Brehm v. Harris*, 619 F.2d 1016, 1020 (3d Cir. 1980). And the Second and Ninth Circuits have applied this standard to such distinctions in the citizenship context. *See Dent v. Sessions*, 900 F.3d 1075, 1082 (9th Cir. 2018) ("Adoptive parents are not a protected class and, therefore, rational-basis review applies to that distinction as well."); *Smart v. Ashcroft*, 401 F.3d 119, 122 (2d Cir. 2005) ("There is no suggestion here that adopted children are a 'protected' class entitled to invoke heightened scrutiny."). Moreover, the Supreme Court has never held that adopted children are a suspect class. Accordingly, we agree with the parties

5

and our sister circuits that rational-basis review should apply here.

"The threshold for upholding distinctions in a statute under rational-basis review is extremely low …." *Pollard*, 326 F.3d at 408. It asks whether there is "a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Real Alts.,* 867 F.3d at 348 (quoting *Pollard*, 326 F.3d at 407). The legitimate purpose "may be based on rational speculation unsupported by evidence or empirical data." *FCC v. Beach Commc'ns., Inc.*, 508 U.S. 307, 315 (1993). And rational-basis review "confers a presumption of validity on legislation" that must be rebutted by the challenger. *Real Alts.*, 867 F.3d at 348 (quotations omitted) (quoting *Brian B. ex rel. Lois B. v. Pa. Dep't. of Educ.*, 230 F.3d 582, 586 (3d Cir. 2000)). Furthermore, under the rational-basis standard, Cabrera "must negate every conceivable justification for the classification in order to prove that the classification is wholly irrational." *Brian B. ex rel. Lois B.*, 230 F.3d at 586. The Government offers three primary justifications for Section 309's differential treatment: "(1) promoting a real relationship between child and the U.S. citizen parent; (2) preventing immigration fraud; and (3) protecting the rights of alien parents." Gov't Br. 14-19. Cabrera could negate these justifications by showing either that these interests are not legitimate or that the classification is not rationally related to those interests. But his arguments fall short on both scores.

To begin, we agree with the Government that its three proposed interests are legitimate. The Supreme Court has recognized the important government interest in developing "the real, everyday ties that provide a connection between child and citizen parent and, in turn, the United States." *Tuan Anh Nguyen v. INS*, 533 U.S. 53, 65 (2001). We also agree with many

6

of our sister circuits that preventing immigration fraud is a legitimate interest. *See, e.g.*, *Dent*, 900 at 1082 (holding that preventing immigration fraud is a legitimate government interest); *Smart*, 401 F.3d at 123 (same); *Bangura v. Hansen*, 434 F.3d 487, 495 (6th Cir. 2006) (same). And finally, we have recognized the government's legitimate interest in "protecting the rights of alien parents" in the immigration context. *Catwell v. Att'y Gen. of U.S.*, 623 F.3d 199, 211 (3d Cir. 2010).

We also agree with the Government that the disparate treatment in Section 309 is at least rationally related to advancing these interests. Requiring an adoptive parent to apply for citizenship on behalf of his or her child, as opposed to conferring citizenship automatically upon the child, increases the probability that those who take the time to navigate that process have a real parent-child relationship. These additional requirements also reduce the likelihood that an adoption will occur solely to obtain citizenship. As the Ninth Circuit noted, "[r]equiring adoptive parents to petition for their children's naturalization helped ensure that the child had a genuine relationship with the parent [and] gave the government the opportunity to inquire into naturalizing parents' relationships with their previously adopted children." *Dent*, 900 F.3d at 1082. Furthermore, if adopted children could obtain automatic derivative citizenship, then the child's biological, alien parents could be cut out of the process of determining their child's citizenship. Accordingly, we hold that Section 309 is rationally related to legitimate government interests.

In so holding, we need not, and we have not, expressed our approval or disapproval of the challenged law. Rational-basis review does not require us to do so. It requires only that

7

we find a rational relationship to a legitimate government interest. Because we have done so here, we will deny Cabrera's petition for review.