**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3209
_____

DEMAR HUGH CAMPBELL,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A047-927-750)
Immigration Judge:  Kuyomars Q. Golparvar
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 1, 2020

Before: KRAUSE, MATEY, and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: February 2, 2021)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Demar Hugh Campbell seeks review of the final agency order authorizing his removal from the United States. The Government has moved to dismiss Campbell's petition for review (PFR) as untimely. We deny that motion. Additionally, because the only issue properly presented by Campbell lacks merit, we will deny the PFR.

I.

Campbell was born in Jamaica. At age 17, he immigrated to the United States and obtained the status of a lawful permanent resident (LPR). Several years later, he pleaded nolo contendere to a drug charge in Pennsylvania. As a result, Campbell was served with a notice to appear, charging removability under 8 U.S.C. § 1227(a)(2)(B)(i) (making most drug convictions removable offenses). After a bit of litigation before the agency, an immigration judge (IJ) granted relief in the form of cancellation of removal.

But Campbell committed more crimes: he was convicted of drug possession and, separately, aggravated assault. A new notice to appear followed, charging removability under § 1227(a)(2)(B)(i), § 1227(a)(2)(A)(ii) (making aggravated felonies removable offenses) via § 1101(a)(43)(F) (defining "aggravated felony" as a "crime of violence" under 18 U.S.C. § 16), and § 1227(a)(2)(A)(ii) (making the aggregation of two or more convictions for crimes involving moral turpitude (CIMT), not arising out of a single scheme, a removable offense). The IJ declined to sustain the aggravated felony and CIMT charges, but sustained the § 1227(a)(2)(B)(i) charge. The IJ determined, separately, that Campbell's aggravated assault conviction constituted a "particularly

2

serious crime" (PSC) under the Immigration and Nationality Act, thus barring him from certain forms of relief.

To defend against removal, Campbell argued that he had acquired United States citizenship when he first entered the United States, as a result of his grandmother's earlier naturalization. Campbell also filed an application for asylum, withholding of removal and relief under the Convention Against Torture (CAT), based on past and feared harm related to his sexual orientation.

The IJ rejected the naturalization argument upon finding no evidence that Campbell satisfied the requirement that his grandmother was his legal guardian. Because of the PSC, the IJ determined that Campbell was eligible only for deferral of removal under the CAT. Cf. Bastardo-Vale v. Att'y Gen., 934 F.3d 255, 261, 265 (3d Cir. 2019) (en banc). The IJ rejected the CAT claim, finding it unlikely that the Jamaican government would acquiesce to any harm Campbell might suffer. The IJ ordered that Campbell be removed to Jamaica.

By decision dated July 2, 2019, the Board of Immigration Appeals (BIA) dismissed Campbell's appeal. It agreed with the IJ's naturalization, PSC and CAT rulings, for substantially the reasons given by the IJ. The BIA acknowledged three new letters submitted by Campbell on appeal, but determined that those letters did not warrant a remand to the IJ.

Proceeding pro se, Campbell filed a PFR of the now-final order of removal.

3

Campbell filed the PFR from SCI-Dallas in Pennsylvania, the prison where he is serving time pursuant to his aggravated assault conviction.

## II.

We first consider the timeliness of the PFR, in light of the Government's motion to dismiss. Under 8 U.S.C. § 1252(b)(1), "[a] petition for review must be filed within thirty days of the final removal order." Verde-Rodriguez v. Att'y Gen., 734 F.3d 198, 201 (3d Cir. 2013). That deadline is mandatory and jurisdictional; unique circumstances or other equitable considerations cannot excuse noncompliance. See McAllister v. Att'y Gen., 444 F.3d 178, 185 (3d Cir. 2006); see also Bowles v. Russell, 551 U.S. 205, 214 (2007).

If the thirty-day time period began to run on July 2, 2019, when the BIA issued its decision, then Campbell's PFR is untimely and we lack jurisdiction to consider it. Campbell is an inmate in state custody, so the prison mailbox rule is potentially in play. See Houston v. Lack, 487 U.S. 266, 276 (1988); cf. Chavarria-Reyes v. Lynch, 845 F.3d 275, 278 (7th Cir. 2016). Even still, the earliest filing date available to Campbell is August 12, 2019, when he signed his PFR. See Pabon v. Mahanoy, 654 F.3d 385, 391 n.8 (3d Cir. 2011) ("The federal 'prisoner mailbox rule' provides that a document is deemed filed on the date it is given to prison officials for mailing."); cf. Fed. R. App. P. 25(a)(2)(A)(iii) (providing that mailbox rule will aid inmate if he supplies evidence that his legal paper was "deposited in the institution's internal mail system on or before the

4

last day for filing and . . . that postage was prepaid").[1]  It thus might appear that Campbell filed his PFR more than a week too late.

However, there is ample, uncontradicted evidence in the record that Campbell did not receive a copy of the BIA's decision in a timely manner, through no fault of his own. Notably, the initial mailing of the BIA's decision was received by Campbell's place of incarceration on July 18, 2019, and the envelope was subsequently stamped "Return to Sender [-] No Inmate Number."  AR 4.  Neither the envelope nor the enclosed decision contained Campbell's inmate number, even though the BIA was well aware of that component of his mailing address. See, e.g., AR 20 (BIA's May 9, 2019 briefing instruction with Campbell's inmate number listed in the addressee section).

A second mailing was thus required; the new, properly addressed envelope was postmarked on July 26, 2019, and was received by Campbell soon after. See AR 5.[2]  As a result, the 30-day period prescribed by § 1252(b)(1), while inflexible once started, did not begin to run until July 26, 2019.  See Singh v. INS, 315 F.3d 1186, 1188 (9th Cir. 2003)

---

[1] Although the PFR is dated August 12, 2019, it was not received by this Court until September 26, 2019.  Regardless, we are not presented with evidence sufficient to undermine an August 12, 2019 filing date. Cf. Jeffries v. United States, 748 F.3d 1310, 1314 (11th Cir. 2014) (assuming, "[a]bsent evidence to the contrary, . . . that a prisoner delivered a filing to prison authorities on the date that he signed it.").  For its part, the Government does not mention the prison mailbox rule at all, either in its motion to dismiss or its response brief.

[2] It appears that Campbell received a copy of the BIA's decision in early August 2019, and quickly filed a motion to reopen with the agency. See AR 2-3.  The motion was denied by the BIA almost 10 months later.  Campbell has not filed a PFR relative to the

("[T]he time for filing a review petition begins to run when the BIA complies with the terms of federal regulations by mailing its decision to the petitioner's address of record."); see also 8 C.F.R. § 1003.13 ("Service means physically presenting or mailing a document to the appropriate party or parties.").[3]

Accordingly, we conclude that Campbell's PFR is timely under the particular circumstances of this case.[4] We thus deny the Government's motion to dismiss the PFR on timeliness grounds, and move on to the merits.

III.

Campbell raises a single issue in his opening brief, stated thus: "My grandmother is a U.S. Citizen. She brought me here to the U.S. and was my legal guardian therefore I should have been a citizen." Pet'r Br. (doc. 25) at 5; see also Gov't Br. (doc. 28) at 19 ("[T]he sole issue before the Court is whether the government is entitled to what amounts to summary judgment on Petitioner's derivative citizenship claim.").[5]

We have jurisdiction to review nationality claims, including those asserting

---

adverse reopening decision.

[3] One of the regulations analyzed by the court in Singh (8 C.F.R. § 3.1(f)) was moved to 8 C.F.R. § 1003.1(f), without a change in verbiage, as a consequence of the Homeland Security Act of 2002. 68 FR 9824 (Feb. 28, 2003).

[4] Because the chronology of events is confirmed by documentary evidence, there is no need to remand for factfinding. Cf. Jahjaga v. Att'y Gen., 512 F.3d 80, 86 (3d Cir. 2008).

[5] Campbell waited until his reply brief to challenge the BIA's CAT ruling, and did not challenge the BIA's PSC and remand rulings at all. As a result, we agree with the Government that Campbell has waived his ability to challenge those rulings. See Garza

derivative citizenship.  See 8 U.S.C. § 1252(b)(5)(A).  If the claim presents no genuine issue of material fact, we decide it as a matter of law; otherwise, we transfer proceedings to the District Court for an evidentiary hearing.  See id.  In determining whether a genuine issue of material fact is presented, we employ principles of summary judgment practice.  See Joseph v. Att'y Gen., 421 F.3d 224, 229–30 (3d Cir. 2005).

Campbell's derivative-citizenship claim, moreover, is subject to the requirements of 8 U.S.C. § 1431(a)–(b), because he entered the United States—and was allegedly adopted by his grandmother—in late 2001, after the effective date of the Child Citizenship Act of 2000.  See Brandao v. Att'y Gen., 654 F.3d 427, 428 n.1 (3d Cir. 2011); cf. Cabrera v. Att'y Gen., 921 F.3d 401, 403 (3d Cir. 2019) ("When reviewing citizenship claims, we apply the laws that were in effect at the time of the relevant event—i.e., the petitioner's birth, adoption, or eighteenth birthday.").  We thus analyze the claim in light of those requirements.  Cf. 8 U.S.C. § 1431(a) (providing that child born abroad automatically becomes a U.S. citizen when (1) at least one parent is a U.S. citizen; (2) the child is under 18 years old; and (3) the child is residing in the U.S. in the legal and physical custody of the citizen parent pursuant to LPR status).

As noted above, Campbell's claim is based on his assertion that he was adopted by his United States-citizen grandmother.  It appears that Campbell would qualify as a citizen under § 1431(a) if he were able to satisfy "the requirements applicable to adopted

v. Citigroup Inc., 881 F.3d 277, 284–85 (3d Cir. 2018).

children under [8 U.S.C. §] 1101(b)(1)." 8 U.S.C. § 1431(b).[6] That means, based on the nature of the claim presented, that Campbell would have had to supply the agency with evidence he was under the age of 16 when adopted and had been residing under his grandmother's legal custody for at least two years. See 8 U.S.C. § 1101(b)(1)(E)(i).

And that is where Campbell's claim falls short. There is no genuine dispute of fact concerning whether Campbell resided with his grandmother in the United States before age 17, under her legal custody or otherwise: He did not. See, e.g., AR 7 (undated letter from Campbell's grandmother) ("In January 2001, my Grandson was staying with my daughter/his Aunt in Jamaica. * * * Once he arrived to the United States, he remained under my supervision."); AR 35 (Campbell: "I was born . . . on August 2, 1984, and immigrated to the United States on October 27, 2011 at the age of 17 years old as a permanent resident."). As a matter of law, then, Campbell is not a United States citizen. His derivative citizenship claim is without merit.

Accordingly, for the reasons outlined above, Campbell's petition for review will be denied.

---

[6] There is no dispute that Campbell entered the United States when he was "under the age of eighteen years," 8 U.S.C. § 1431(a)(2), and that his grandmother became a naturalized United States citizen prior thereto, cf. 8 U.S.C. § 1431(a)(1). Campbell would also appear to satisfy the final requirement (§ 1431(a)(3)), so long as he were able to qualify as a "child" under § 1101(b)(1).